# HORACE W. CARPENTIER *v.* JOSEPH THIRSTON, GEORGE ENGLEMEYER, A. W. WALL, A. W. HAMMITT, ORRIS FALES, AND DAVID P. SMITH.

CONFIRMED MEXICAN GRANT—POSSESSION OF TILL SURVEY.—Where, by the decree of a Court of the United States, a specific quantity of land is confirmed to a grantee, from the Mexican Nation, or to his assignee, to be selected and surveyed within the exterior boundaries of a larger tract, the confirmee, by virtue of the grant and the confirmation, is entitled, until a final survey, to recover possession of any portion of the land embraced within the exterior boundaries of the larger tract, except as against a person holding title from or the right of possession under the Government.

PARTITION—PARTIES TO MUST HAVE TITLE.—An agreement to establish a partition line between the occupants of adjoining tracts of land is of no validity and cannot be enforced unless the title to the adjoining tracts has passed from the Government and become vested in the parties by whom the agreement is made. In order to render such agreement for a partition line effectual, each party must have the title to and right to dispose of the tract claimed by him, or, in other words, they must be co-terminous proprietors.

Carpentier *v.* Thirston *et als.*

ESTOPPEL—WHAT NECESSARY TO CREATE.—A disclaimer of title to land made to one who has no claim or right to the land to which the disclaimer applies, cannot operate as an estoppel, unless the person to whom it is made is directly influenced to act upon it, and does so act upon it that it would be a fraud upon him to permit the disclaimer to be retracted.

WHAT JURY MAY PASS ON.—It is error for the Court to submit to a jury the question of the legal effect of written documents offered in evidence during the trial.

APPEAL from the District Court, Fourth Judicial District, Contra Costa County.

The decree of final confirmation of the Rancho San Ramon, made in the District Court of the United States, June 4th, 1862, contains the following description :

The land, of which confirmation is hereby made, is the equal undivided one half part of all that certain tract of land situated in the County of Contra Costa, and in the Northern District of California, and known by the name of San Ramon, and extending from [here follows the boundaries]; provided, that there be contained within the exterior boundaries of the tract hereinabove described no more than the quantity of two square leagues of land; but if there be more than two square leagues in quantity within said boundaries, then there is hereby confirmed to the said claimant, Horace W. Carpentier, the equal undivided one half part of a tract of land of the extent and quantity of two square leagues, and no more, to be selected and located at the choice and election of the said confirmee, his heirs, and assigns, anywhere within the exterior boundaries hereinbefore mentioned; provided, only, that the lands so selected and located be in one tract, and not in separate and distinct parcels.

On the 18th of January, 1844, the Romeros petitioned the Governor for a grant of the sobrante, and obtained an order to measure the land and report the result, in order that the sobrante might be conceded to the petitioners. The measurement was never made, however, nor was any grant made to the Romeros.

The Romeros, in expectation of a concession of the sobrante, took possession of the demanded premises in 1845, and they

and their assignees held possession up to the time of the commencement of this action.

The Romeros petitioned the Land Commission for the confirmation of their grant to the sobrante, but it was rejected, and on appeal to the District Court of the United States, was also rejected.

The jury found that the demanded premises were within the exterior boundaries described in the decree of confirmation to Carpentier, of June 4th, 1862.

The jury also found that there was an agreement made in 1844 between the Romeros on one part, and Lorenzo Pacheco on the other part, establishing a boundary line between their respective ranches, and that Mariano Castro assented to and acquiesced in the agreement.

At the time of the trial of this action no final selection and survey had been made of the two leagues confirmed.

The other facts are stated in the opinion of the Court.

*Patterson, Wallace & Stow*, for Appellants.

" The law is settled that where there is a specific tract of land confirmed according to ascertained boundaries, the confirmee takes a title upon which he may sue in ejectment." (*Stanford* v. *Taylor*, 18 Howard, 412.)

And in this Court such a confirmation is held to be equivalent to a patent for the land. (*Natoma Water Co.* v. *Clarkin*, 14 Cal. 548.)

Where the United States have consented to the decree and dismissed the appeal, the validity of the grant "*can never be questioned again.*" (*Mott* v. *Smith*, 16 Cal. 533 ; See, also, *Clark* v. *Lockwood*, 21 Cal. 223 ; *Cornwall* v. *Culver*, 16 Cal. 428–9 : *Teschmacher* v. *Thompson*, 18 Cal. 29 ; *Pioche* v. *Paul*, 22 Cal. 105.)

And, until survey and segregation, plaintiff can maintain ejectment to the exterior boundaries. (*Vanderslice* v. *Hanks*, 3 Cal. 45 ; *Ferris* v. *Coover*, 10 Cal. 621 ; *Cornwall* v. *Culver*, 16 Cal. 429 ; *Clark* v. *Lockwood*, 21 Cal. 223.)

The respondents having shown no title in the Romeros, the

facts found as to the agreement of Mariano Castro with the Romeros can have no effect. If *neither* Castro on the *one hand*, nor the Romeros on the *other hand*, had any title to the lands of which they were in occupation, it would be clear that they could not, by fixing lines, etc., interfere with the effect or boundaries of a valid grant made by the former Government, nor a decree of final confirmation made by the present Government. So, if, as in this case, Castro on the one part *had* a title and the Romeros *had none*, a mere fixing of a boundary of their respective possessions would not give the Romeros a title from the Government, and certainly would not convey any of the title of Castro to the Romeros.

As was said in the case of *Waterman* v. *Smith*, 13 Cal. 418, (where two *contiguous* owners of land, *each of whom had title*, had by award fixed a dividing line,) "the award could not bind the Government or control the effect of its patent;" neither could such an agreement, we submit, control the effect of the final decree of that Government confirming title to the land to one of the co-terminous occupants, and decreeing that the other *had no claim whatever to any portion of the land.*

It is an ascertained fact in this case, that neither at the time of making the supposed agreement fixing the dividing line, nor at any time before or since, did the Romeros have any title to the land in suit, or any adjoining land; that no one was or could be interested in the question as to where the line would run except Pacheco and Castro on the one side, and the Mexican Government then, and now the United States Government, on the other side.

As neither Government was a party to this *agreement*, there can be no estoppel, of course, against either Government.

The true theory upon which these parol agreements as to boundary lines is upheld, is stated in *Hagey* v. *Detweiler*, 35 Penn. 409: "But adjoining owners, who adjust their division line by parol, do not create or convey any estate whatever between themselves; no such thought or intention influences their conduct; after their boundary is fixed by consent, they

hold up to it *by virtue of the title deeds, and not by virtue of a parol transfer.*"

It will be observed that the Court speaks of "*owners*," "*adjoining owners*," as being the only ones who may make this parol division—*otherwise*, and except as between *owners*, no such agreement could be made.

Hence, if one has title and the other has not, there is no mutuality in the agreement, and neither is bound by it. (*Perkins* v. *Gay*, 3 Sergt. & Rawle, 331.)

This exact question was so decided in the case of *Terry* v. *Chandler*, 16 N. Y. (2d Smith) 355.

In all cases where the "consentable line" has been upheld, it is upon the idea that the parties are *contiguous owners*. (*Henry Thacker* v. *John Guardinier*, 7 Metc. 484; *Gray* v. *Berry*, 9 N. Hamp. 473; *Dibble* v. *Rogers*, 13 Wend. 537; *Adams* v. *Rockwell*, 16 Wend. 285; *Wilson* v. *Hudson*, 8 Yerger, 407; *Heirs of Houston* v. *Matthews*, 1 Yerger 46; *Pierson* v. *Mosher*, 30 Barbour, 81; *Dudley* v. *Elkins*, 39 N. Hamp. 78.)

And in *no case* has such an agreement ever been upheld where one of the parties was ascertained *not to be the owner*. The reason is obvious. The agreement is only maintained on the principle of "*estoppel*." The subject matter of estoppel is the boundary of land—such an estoppel can only be created by the acts of one *who is in fact owner of the land*. If so created, it operates against the land itself, into whose hands soever it may come, deriving title from the party making the agreement; the estoppel is affixed to the title thereafter; but none can so affix it unless he *have the title at the time*.

Suppose A., a party in possession, agrees with B., a co-terminous possessor, upon a dividing line, and afterwards the true owner of the premises claimed by A. recovers them from him in an action at law; can it be pretended that the owner who so recovered is bound or estopped by such an agreement? Surely not; and if *he* is not so bound, *B.* is not bound, because *estoppels must be mutual*.

Here the Government has, in the assertion of its just rights,

Carpentier *v.* Thirston *et als.*

declared itself to be the owner of all the land claimed by the Romeros in this transaction. Is the Government estopped by the unauthorized act of Romero? Certainly not; and if not, there can be no estoppel on the other side either.

If the argument were worth pursuing upon this point, we might suggest that the final decree in favor of the appellant, entered by the consent of the Government, fixing the boundaries of this land, so lately as the 4th day of June, 1862, and confirming his title thereto, is conclusive, so far as the principle of an " estoppel " is concerned.

Again, the appellant derives his title from the United States Government, by decree of 4th June, 1862. That Government was never a party to any transaction with Romero or his successors, except in *rejecting their claim.* And appellant derives title also through the Mexican Government, which Government was never a party to any transaction with the Romeros about the land, except in *refusing to make them a grant for it.*

The United States Government being, then, free to act, could it not give the land to Carpentier by its action?—by its final decree, entered in its own Courts, by its own express consent?

Though Fremont had done enough to estop himself in the Mariposa Estate, yet, said this Court, in *Biddle Boggs* v. *Merced Mining Co.*, 14 Cal. 373 : " The Government could not be estopped from asserting its title and *disposing of it to whomsoever and whenever it thought proper.*"

The reasoning of this Court in the *Biddle Boggs case*, (*vide* pp. 372, 373,) is peculiarly applicable to this case. Suppose that it was true that Pacheco and Castro did consider that the land in controversy was ungranted public land, belonging to the Government, " no prohibition existed against a subsequent acquisition of the title from the superior proprietor. The defendant could not acquire by mere occupation any rights which could control the action of the Government. The defendant could only hold so long as the superior proprietor permitted, and if that proprietor saw proper to give the land to Carpentier, or to any other person, the defendant could interpose no valid objection. The Government could not be estop-

ped from asserting its title and disposing of it to whomsoever and whenever it thought proper."

*S. Heydenfeldt*, also for Appellants.

The defense set up in the answer relies upon an agreement for a dividing line made between the Romeros and Domingo Peralta, so that both the evidence and the finding were departures from the pleadings. The plaintiff was not called upon to meet any proof of an agreement with any other than with Peralta.

The agreement was void for want of consideration, because the Romeros had no title to any land whatever. It must be too clear for argument that one having no title to land cannot make a valid and binding agreement as to boundary with one who has the title. The effect attempted here to be given to *this* supposed agreement is to make it confer title to land on one who had no title. This, of course, cannot be done, unless the Court can construe such an agreement into an absolute sale by the one who has title to him who has none. This cannot be, because no such thing is pretended or relied on. The Romeros do not set up a claim of title under Pacheco or Castro, or either of them, but under the Mexican Government, and it has been determined that their claim, as they set it up, is invalid. Nor can it be done, because the agreement as proved does not partake of the nature nor contain any of the incidents of a sale, even supposing that a sale of land could be made without writing.

The agreement cannot operate by way of estoppel. The Romeros, in order to set up estoppel, must show that the conduct, or word, or agreement, misled them, and induced them to alter their condition, and that they were ignorant of the facts. (See *Hastler* v. *Hays*, 3 Cal. 306 ; *Goodale* v. *Scannell*, 8 Cal. 29 ; *McCracken* v. *San Francisco*, 16 Cal. 626 ; *Burritt* v. *Dickson*, 8 Cal. 113.)

The doctrine of estoppel is construed with great strictness, because loose statements or recitals, so far from expressing the

truth, may exclude a party from alleging the truth. (*Osborne* v. *Endicott*, 6 Cal. 153.)

So in *Greene* v. *Bates*, 6 Cal. 272, in a case where a party owning land stands by and in silence permits another to occupy and improve, Judge Murray said: "Estoppel in such cases proceed on the ground of fraud or culpable silence," and therefore held in that case there was no estoppel.

In *Moore* v. *Wilkinson*, 13 Cal. 488, the plaintiffs had published a notice stating that they had become owners of the grant, and specifying its boundaries, and warning trespassers not to come within such boundaries; upon which Mr. Justice Field said: "Such notice could not operate as an estoppel upon the plaintiff. It was only evidence of the opinion the parties entertained of the boundaries of their claim."

*J. B. Crockett*, for Respondents.

If the facts found by the jury are true, (as they must be assumed to be on this appeal,) the important question is presented, whether or not, under such facts, the claimants can maintain ejectment for all the lands within the exterior boundaries. This Court has so often decided that, under ordinary circumstances, a Mexican grantee is entitled to the possession of all the lands within the exterior limits of the grant, until his claim has been located by a final survey, that I do not propose again to moot the question. But whilst the general proposition is conceded, it is equally plain that it does not hold good in all cases. The last case in which this question was considered by the Court is *Mahoney* v. *Van Winkle*, 21 Cal. 552, in which the prior decisions are fully reviewed and the whole question definitely settled. The Court in that case distinctly decides that if the grantee, in advance of a survey, selects his quantity and location, uses it, leases it, and sells it, and by his acts or in words disclaims title to the remainder, he is estopped to assert title or right of possession to any lands outside of his selection, prior to a final survey. That is precisely this case. The jury finds and the proof establishes that Pacheco and Castro not only consented to the occupation of Romero, and that the lands

might be granted to him, but agreed upon a dividing line, and restricted their possession and claim of title to that line. Romero went there with their consent, and occupied his lands, not only without remonstrance, but at their desire. Under the principle established in *Mahoney* v. *Van Winkle*, the plaintiff cannot disturb that possession in advance of a final survey, whether Romero had title or not. To defeat this action, it is enough to show that Pacheco and Castro consented to the occupation of Romero, agreed with him on a dividing line, confined their occupation and claim to that line, and disclaimed title to the remainder. It is not material whether Romero acquired any title from the Mexican Government. Under the facts found by the jury, and on the principles settled in *Mahoney* v. *Van Winkle*, the plaintiff is estopped to deny the right of possession of the defendants in advance of a final survey. I deem it useless to elaborate this point, for the reason that it is fully covered in the case referred to.

The appellant's counsel seeks to break the force of this position by invoking the dry, technical, common law rule, that no agreement for a partition line is valid, unless each of the parties to it has title to the co-terminous lands, and he says Romero had no title, and the agreement was therefore void. This principle has no application to the case. The partition line is not relied upon as a technical partition, and as a final settlement of a disputed boundary, but as evidence that Pacheco and Castro selected their location, and limited their occupation and claim by that line. Any other act establishing the selection and location would have been as effectual. If they had caused a private survey to be made of their two leagues, had marked the boundaries, and confined their occupation to these limits, and disclaimed title to the remainder, this would have been sufficient. This was precisely what was relied upon as a selection in *Mahoney* v. *Van Winkle*, and the Court held it bad only because the claimants were infants and married women, and, therefore, incapable of binding themselves by such acts. Except for this, the Court would have decided the selection to be obligatory in that case.

Carpentier *v.* Thirston *et' als.*

" But," the Court adds, " to restrict the possessory right of the grantee to the selection made, the selection must be made with such disclaimers as to the residue of the general tract as to operate as an estoppel upon him." The only question, therefore, is, did the grantee make his selection, accompanied by such disclaimers as to the residue as to operate as an estoppel upon him? We say Pacheco and Castro *did* make their selection; and as evidence of it, we prove that they agreed with Romero upon their northern line, and thenceforth limited their occupation and claim by it, and recognized this line as their northern boundary. And we say that they disclaimed title as to the residue, not only in terms, but that they expressly agreed that the residue might be granted to 'Romero, and they expressly assented to his occupation. We therefore say they are estopped by their own acts as against Romero and his vendees. In *Biddle Boggs* v. *Merced Mining Co.*, the Court held there was no valid estoppel against Fremont's *patent;* but if the suit had been brought in advance of the survey and patent, it is manifest from the whole opinion, the Court would have held the estoppel in that case to be valid.

The partition line, therefore, in this case, is relied upon only as conclusive evidence of the selection and location, and as evidence of a disclaimer as to the residue; and, therefore, the common law doctrine invoked by the appellant, as to the title of the co-terminous owners in settling disputed boundaries, has no application. The question is not whether a *valid* partition line has been finally and conclusively established between these parties for all time; but whether, in consenting to this line, limiting themselves by it, disclaiming title as to the residue, consenting to the grant to Romero, and to his occupation, Pacheco and Castro did not select their location, with such a disclaimer as to the remainder as to estop them *prior to a final survey.* I admit the estoppel may not bind them, if the Government finally locates the land so as to include the possession of Romero. But, until this is done, the estoppel operates. It would be most unjust if it were otherwise. The grantee is entitled to but *two* leagues out of *six.*

Another person applies for the surplus. The grantee consents it may be granted. Whilst the proceedings are pending, the applicant goes into possession with the consent of the Government and of the first grantee, and they agree upon a partition line, which is respected by both for a series of years. Whilst matters remain in this condition, and before a final survey, the first grantee brings his action to oust the other from a possession originally acquired with his consent, and with the consent of the Government.

By the Court, RHODES, J.

This is an action of ejectment to recover the possession of a portion of the Rancho San Ramon, situated in the County of Contra Costa.

The plaintiff claims title under a grant issued by the Governor of California to Bartolo Pacheco and Mariano Castro, in 1833, and approved by the Territorial Deputation in 1834. Mariano Castro, by deed dated August 6th, 1852, recited that in 1843 he had conveyed, and he thereby again conveyed, all his right, title, and interest in and to the said rancho to Domingo Peralta, who, in 1857, conveyed the same to John B. Watson, and Watson, in 1858, conveyed the same to the plaintiff.

Domingo Peralta having filed his petition for confirmation before the Board of United States Land Commissioners, praying for the confirmation of the title to the one undivided half of said rancho, such proceedings were had before said Board and before the District Court of the United States that a final decree was filed in said Court on the 4th day of June, 1862, finally confirming to said plaintiff (who had been substituted for said Peralta) the undivided half of said rancho, the tract confirmed being restricted to two square leagues of land, the whole rancho containing six square leagues.

The complaint alleges that the plaintiff is the owner in fee and entitled to the possession of a certain portion of the rancho, described by metes and bounds, and contains the usual allegations of ouster and possession by the defendants.

Carpentier *v.* Thirston *et als.*

The defendants, by their answer, deny that the plaintiff is the owner or is entitled to the possession of the premises; and allege that they are the owners in fee and entitled to the possession of the premises under title derived from Inocencio, José, and Mariano Romero, who were formerly the owners thereof. And they allege, for a further defense, that before the commencement of the suit the Romeros were in possession of the premises, claiming title under a grant from the Mexican Government, and that said Peralta was in possession claiming title to an adjoining rancho; that a dispute arose between the Romeros and Peralta in respect to the dividing line of the two ranchos; that thereupon, to terminate said dispute, the parties agreed upon and established a dividing line, and that thereby the premises in dispute were included in the rancho of the Romeros; that by mesne conveyances the defendants have succeeded to the rights of the Romeros. The pleadings are verified.

The case was tried by a jury, who returned a general verdict for the defendant, and special findings, in answer to the several interrogatories submitted to them on motion of the respective parties.

The plaintiff excepted to the general verdict, and to several of the findings on the special issues, and moved for judgment in his favor upon the special findings; and the motion having been overruled, and judgment having been entered for the defendants, the plaintiff moved for a new trial, which was denied.

The plaintiff appeals from the order denying the motion for a new trial and from the final judgment, and assigns many errors, which, however, may be reduced to a few general heads.

There is no question that the plaintiff is the owner in fee of the undivided half of the Rancho San Ramon, as confirmed by the final decree of the District Court of the United States, to the extent of two square leagues, and that by virtue of the grant under which he claims and said confirmation, he is entitled, until a final survey, to recover the possession of any portion of the whole rancho from any one, except a person claim-

ing title or the right of possession under or through Pacheco or Castro, the grantees, or the Government.

This principle has been so fully settled by this Court by repeated decisions, and particularly in the case of *Mahoney* v. *Van Winkle*, 21 Cal. 552, that it is unnecessary to give any reason therefor; and the learned counsel of the defendants admits the correctness of the general proposition. He insists, however, that this case falls within the exceptions to the general rule, as stated in the case last cited, viz : if the grantee, in advance of a survey, elects his quantity and location, uses it, leases it, and sells it, and by his acts or words disclaims title to the remainder, he is estopped to assert title or right of possession to any land outside of his selection prior to a survey; and he says that as Pacheco and Castro not only consented to the occupation of the sobrante by the Romeros, but agreed upon a dividing line between the rancho and the sobrante, and as both parties occupied in accordance with said dividing line, the grantees are estopped from claiming beyond the division line prior to a final survey. This brings us to the consideration of the principal question involved in the case.

The document introduced in evidence by the defendants against the objections of the plaintiff, consisting of the two petitions of the Romeros to the Governor, the first dated January, 1844, for the grant of the sobrante of the Ranchos of Moraja, Lorenzo Pacheco and Julian Wil, the other dated March, 1844, for a grant, provisionally, that they might commence sowing before the proper season should pass, with the orders for the *informe* and for the measurement of the land, and the two petitions to the Alcalde of San José, together with his orders respecting the same, fail to establish (as was decided by the District Court of the United States) any title in the Romeros, either perfect or inchoate, to any portion of the Rancho San Ramon as against the Government, and those documents, therefore, did not confer upon them any right of possession. No other evidence was offered by the defendants tending to show title or right of possession in them derived from the Government. The Romeros,

therefore, were not in a position to establish a partition line as between adjoining owners of the land.

But it is insisted by the defendants that the establishment of the division line, as testified to by the witnesses, though not sufficient as a technical partition line between co-terminous proprietors, was evidence of the selection of the location of the two square leagues by Pacheco and Castro, and that such selection of the location, accompanied by evidence of a disclaimer of the residue of the land not included within the location, amounted to an estoppel against the said grantees, and would effectually prevent a recovery of any of the lands outside of said location prior to a final survey. The estoppel claimed is of the class of equitable estoppels, which has grown up under the influence of equity in modern times, and not of the technical estoppels recognized by the old rules of the common law. An equitable estoppel is well defined by Mr. Chief Justice Field, in *Biddle Boggs* v. *Merced Mining Company*, 14 Cal. 367. He says : "It must appear, *first*, the party making the admission, by his declarations or conduct, was apprised of the true state of his own title ; *second*, that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud ; *third*, that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge ; and, *fourth*, that he relied directly upon such admission, and will be injured by allowing its truth to be disproved." The estoppel relied upon by the defendants is not claimed to have affected the title, but only that it attached itself to the possession, and continued effective until the person holding the title could proceed, upon a final survey, to take possession by virtue of his title and the survey ; and, in order to create one of the requisites of such estoppel, they allege that the Romeros took and held possession of the sobrante with the *consent* of the grantees as well as of the Government.

The consent of the grantees must be proved to have been one of the causes moving the Romeros to take possession, otherwise it could not operate so as to constitute one of the facts creating

36

the estoppel. Inocencio Romero testified, against the objection of the plaintiff, that he took possession under the order of the Governor—he evidently referring to the two petitions of the Romeros to the Governor, and the orders thereon—and the jury found as a fact, upon an interrogatory submitted to them, that the Romeros did take possession, in 1844 or 1845, by virtue of those two petitions and the orders thereon. His testimony concerning his conversation with Pacheco shows that the conversation related to the question as to whether Pacheco was willing that the Romeros should procure a grant of the sobrante, and he states that Pacheco was willing that it should be done; but there is no evidence showing that the Romeros expected to or did take possession by reason of such consent, nor that at that time there was any understanding or expectation that the Romeros would take possession before the land was granted to them by the Government.

It is contended by the defendants that the designation by Pacheco and Castro of the creek mentioned by the witnesses as their northern boundary, amounted to a location by them of their two square leagues, and a disclaimer as to the residue of the rancho—the land north of said creek—and that the disclaimer would continue operative against them and their grantees, by way of an estoppel, until a final survey of the rancho, (not considering the boundary line as a technical partition, and not regarding the disclaimer as a consent to the defendants' occupation of the residue so disclaimed,) and in support of this position they rely particularly upon the doctrine enunciated in the case of *Mahoney* v. *Van Winkle*, 21 Cal. 580.

The Court in that case holds that the grantee may make a selection and location of his specific quantity, "under such circumstances and accompanied with such disclaimers as to estop him from the assertion of any title or right to the possession of the remainder existing within the exterior boundaries of the general tract, until, by the action of the Government, it is determined that his claim under the grant shall be satisfied by land elsewhere selected." Mr. Chief Justice Field, in delivering the opinion of the Court, then proceeds to discuss the

nature and effect of the disclaimer; and in declaring its effect upon the question of the recovery of possession, he evidently regards it as one of the facts which, taken in connection with other circumstances, may operate as an estoppel as to the residue not included within the location; for it could not be contended that a mere verbal disclaimer, be it as complete as it may, if made to one having no right or title to the lands to which the disclaimer applied, could, by its own proper force, operate as an estoppel, unless the person to whom it was made was directly influenced to rely upon it, and did act thereon in such a manner that it would be a fraud to him to permit the disclaimer to be retracted.

The decision in that case fully harmonizes, on this point, with that of *Biddle Boggs* v. *Merced Mining Co.* But, even assuming that the Court was considering the consequences of a disclaimer, taken by itself and disconnected from any other facts (except the possession of the defendants) which might, united with it, amount to an estoppel, the Court held, in that case, that the proof offered in the Court below was properly excluded, as it showed that a part only of the tenants in common of the rancho participated in the alleged disclaimer.

In the case at bar, Inocencio Romero testified that his conversation about the dividing line was with Pacheco, and not with Castro, his tenant in common; and he does not mention any conversation between him and Peralta, who succeeded Castro, and he does not pretend that any agreement was made concerning the division line, except the one mentioned as having been made in 1844, between him and Pacheco.

The testimony of Pico shows that several attempts were made by him to have the survey of the northern line of the Rancho San Ramon made, but in this he failed, when he told Romero to put himself in possession until a survey should be made; and Romero having put himself in possession, " it so remained until 1849, when a dispute arose between Romero and Peralta about the boundaries, and then a surveyor went to measure the land." This does not indicate that a location of the rancho was made and the line dividing the rancho agreed upon, but

rather the contrary; and it would seem that the true solution of the matter is found in Pico's testimony, when he states that the *rodeo* line of the ranch was near a creek which divides it. The defendant's witnesses — Victor Castro, Ignacio Sibrian, and José Maria Amador—all mention the creek as the *rodeo* line.

If we admit that there was some evidence that Pacheco agreed to a line as a dividing line between the rancho and the sobrante sufficient for the jury to find that he had so agreed, still there is no evidence that Castro or Peralta regarded such a line as anything more that a rodeo line, a line that might or might not coincide with the true line of the rancho. Their agreement or assent to that line as the rodeo line could not operate as a disclaimer on their part as to the residue of the rancho north of the line.

The evidence in the case fails to show the existence of other facts necessary to create the estoppel, as defined in the case above cited. (*Biddle Boggs* v. *Merced Mining Company.*) Neither Pacheco, Castro, nor Peralta, could at that time point out the limits of the two square leagues that would be surveyed for the Rancho San Ramon; the Romeros had the means of acquiring the knowledge of the true state of the title to the rancho, and they evidently did know it, and there is not sufficient, if any, evidence to prove that the Romeros relied directly upon the acts of admission of Pacheco or Castro for any purpose except to procure a grant of the sobrante; and the petitions of two of the Romeros, in 1847, to Burton, as Alcalde of San José, state that they had not then procured the possession of the lands they had petitioned for in 1844.

The view that we have thus taken of the case, renders it unnecessary to consider in detail the several errors assigned.

The Court should have given to the jury the fourth, seventh, and eighth instructions asked for by the plaintiff.

The following instructions given by the Court were erroneous, for the reasons already stated, viz: " That from all the evidence and circumstances, the jury might find an agreement between Inocencio Romero and Mariano Castro, relating to a

Carpentier *v.* Thirston *et als.*

division line between them, notwithstanding the jury might find that said Romero had positively testified in this case that he did not make any agreement with said Castro, or have any conversation with him in relation thereto;" also, "that if Bartolo Pacheco or Lorenzo Pacheco agreed with the Romeros, or either of them, upon a dividing line prior to the occupation of the Romeros, and with a view to their occupation in expectation of a grant, and if Mariano Castro, while he was a part owner of the Rancho San Ramon, was informed of and acquiesced in said agreement, such an agreement was as obligatory upon him as if it had been made by him in person."

The Court also erred in submitting to the jury the fourth interrogatory requested by the defendants, for the additional reason that it leaves the jury the determination of the legal effect of the papers referred to in the interrogatory. The seventh, eighth, ninth, and seventeenth interrogatories of the defendants were improperly submitted to the jury.

The judgment is reversed and the cause remanded for a new trial.

By SAWYER, J., concurring specially:

I concur in the opinion that the judgment should be reversed and the cause remanded.

Mr. Justice CURREY expressed no opinion.