A. G. RICH *v.* STEPHEN MAPLES, AARON MAPLES, THOMPSON MAPLES, AND MARIA TRINIDAD PERALTA DE CASTRO.

Possession of Mexican Grant.—The holder of a grant of land made by Mexico, of a specific quantity, to be located within the exterior limits of a larger tract, acquires a vested interest in the larger tract which entitles him to the possession of the same, and the rents and profits thereof, until the specific quantity granted is segregated by the Government.

Act declared Unconstitutional.—The Act of April 26th, 1858, which provides that a person ousted from the possession of land, in an action at law, by a person claiming title under a foreign grant, which shall thereafter be so located as not to include the land recovered, may recover back the land and the rents and profits thereof, is unconstitutional if applied to land where the grant is of a

specific quantity, to be selected within the exterior limits of a larger tract, and the land recovered is within such exterior limits.

RENTS AND PROFITS.—The person entitled to the possession of land is also entitled to the rents and profits, and the Legislature has no power to enable another person, who has no title, to recover from him those rents and profits.

POSSESSION OF PUBLIC LAND.— A person in possession of public land under a judgment giving him possession, is presumed to be rightfully in possession until some one shows a right to the possession derived from the United States.

APPEAL from the District Court, Third Judicial District, Santa Clara County.

The plaintiff declined to amend his complaint, and judgment was rendered against him. He appealed from the judgment.

The other facts are stated in the opinion of the Court.

*Peckham & Payne*, for Appellant.

An Act of the Legislature may be constitutional in part and unconstitutional in part. Courts will never hold an Act void in whole because some of its provisions contravene the organic law, unless in the case where it is compelled to presume that the Legislature would not have enacted that part which is in harmony with the Constitution without the passage of that part which is repugnant to it. (*People* v. *Hill*, 7 Cal. 104; *People* v. *Burbank*, 12 Cal. 393; *Lathrop* v. *Mills*, 19 Cal. 513; *Robinson* v. *Bidwell*, 22 Cal. 397; *French* v. *Teschemaker*, 24 Cal. 539; *Com.* v. *Hutchings*, 5 Gray, 482.)

The Act in qustion is naturally susceptible of two divisions in testing it by the Constitution. The Act, so far as it gives the right to recover the possession from which the plaintiff has been ousted, with the value of the rents and profits, after the time of judicial ascertainment that the premises were not included within the boundary of the foreign grant, is one thing; and the Act, so far as it gives damages for the costs and injuries sustained by the original ejectment suit, with the value of the rents and profits from the ouster to such final determination, is another. As to the former, the Act is constitutional; as to the latter, it may or it may not be so.

It is very difficult, if not impracticable, to set any limits

upon the power of the Legislature, except those fixed by the Constitution. It is only when the Legislature exercises a power forbidden by the Constitution, or undertake to interfere with a right secured and placed above legislative power by that instrument, that the Judiciary can interpose. (*Patterson* v. *Board of Supervisors*, 13 Cal.; *Hobart* v. *The Supervisors*, 17 Cal. 23; *Smith* v. *Judge*, 17 Cal. 547; *Ex parte Andrews*, 18 Cal. 679; *Borland* v. *Hildreth*, 26 Cal. 183; *Ex parte McCarthy*, 29 Cal. 396; *People* v. *Sassovich*, 29 Cal. 480; Smith's Com. 402.)

We are referred by counsel to no provision of the Constitution which the Act in question is supposed to violate. It violates none, unless it be the first section of the first Article, which declares that the right of acquiring, possessing, and protecting property, shall be inalienable. And unless the Act operates to divest vested rights of property, then it is no violation of this section.

It does not interfere with a vested right in property in any respect whatsoever. On the contrary, it confers no right upon the person ousted to recover back the land until it is determined by a competent tribunal that the person who ousted him has no right in the land whatsoever. His right in the land previous to the survey and location may be to have possession of the whole; but it is not until this right has ceased to exist that the Act which we invoke has any operative effect. A possession under a claim of an estate for years, is presumptive evidence of an estate for years—so possession under a claim of an estate for life or in fee. But no presumption arises from possession of a higher estate than the possessor claims. (*Ricord* v. *Williams*, 7 Wheat. 59; 5 Cond. Reps. 237.)

It is only in like cases where the presumption of title from possession is overcome by the circumstances that the Act purports to have any operation.

This doctrine of presumptions is only a rule of evidence, and the rules of evidence belong to the law of the remedy, and are always the subject of legislative control. (*Chandler* v. *Northrup*, 24 Barb. 129.)

*S. O. Houghton,* for Respondents.

The grant being for two leagues within an area including a greater quantity, the holder of the grant certainly was the owner in fee of an undivided two leagues of the tract described in the grant, and entitled to the possession of the entire tract until the proper officers of the Government segregated and separated the specific quantity granted from the remainder.

It is a proposition not open to controversy, that when one has the exclusive right to the possession of lands, no right of possession to the same lands can exist in any other person. Mrs. Castro alone having the right of possession in this instance, it results that Rich never had any right to the possession, and the judgment in the ejectment suit establishes the fact, conclusively, as against him, that he was a bare trespasser, having no right in the land at all.

The appellant founds his right to recover in this action upon some rights claimed to be conferred upon him by the Act of the Legislature entitled "An Act for the better protection of settlers on public lands in this State, and to secure the rights of parties in certain cases." This Act, it is submitted, is unconstitutional in this, that it imposes a penalty on a person having a legal right to the possession of lands, if that person protects his possession by the aid of the Courts of the country against wrongdoers and trespassers, in the event that his right of possession shall at some subsequent time pass to the Government of the United States, thus attempting to convert a rightful possession into a wrongful one; in effect making the owner of lands a trespasser upon his own premises, and conferring rights recognized by law to exist in one upon another who has intruded upon such rights, and in so doing has violated not only rights of property but the law of the land.

We are told that the Act is remedial. A remedial statute is one which provides a means for the enforcement of a right or the redress of a wrong. This Act neither provides the

means to enforce a right nor to redress a wrong. It is an unauthorized attempt on the part of the Legislature to infringe the rights of one class of citizens for the benefit of another. It infringes the rights of property of the holders of Mexican grants, by depriving them of the only thing which makes property worth having—its use and enjoyment; and, in effect, gives the use and enjoyment of it to any one who chooses to take possession of it. The Act provides for taking from one person his property and giving it to another. It is true it does not purport to transfer the fee of the land, but it does give to a trespasser and wrongdoer the rents and profits of land which belong to another, and are as much his property as the land itself. It further gives to trespassers the possessory title which the holder of the grant acquires by virtue of his prior rightful possession, which is a right of property that has always been recognized, and which indeed is the origin of all rights of property. It is, in one sense, a title ; for the prior possessor is universally recognized as entitled to protect and maintain his possession against all the world but the true owner—one having a paramount title. It has been often held in this country that it is beyond the scope of legislative power to take the property of one and give it to another. (*Bloodgood* v. *The Mohawk and Hudson Railroad Co.*, 18 Wend. 56 ; *Beekman* v. *The Saratoga and Schenectady Railroad Co.*, 3 Paige, 73.)

Mrs. Castro's title was good against the whole world but the Government of the United States. The doctrine that a State Legislature is possessed of all power not expressly withheld from it by the Constitution has long been overturned. There are rights not expressly reserved to the people by the Constitution which the Legislature cannot impair. (*Billings* v. *Hall*, 7 Cal. 9, 18 ; *Lathrop* v. *Mills*, 19 Cal. 529, 536 ; 4 Barb. 64, 74 ; 2 Seld. 358 ; 15 Barb. 529 ; 4 Conn. 209.) In *Benson* v. *The Mayor of New York*, 10 Barb. 223, Mr. Justice Barculo declared that the rights of persons did not rest " merely upon the Constitution, but upon the great principles of eternal justice which lie at the

foundation of all free governments." In *Colder* v. *Bull*, 3 Dall. 386, it was said by Mr. Justice Chase : " I cannot subscribe to the omnipotence of a State Legislature, or that it is absolute and without control, although its authority should not be expressly restrained by the Constitution or fundamental law of the States." (See, also, *Wilkinson* v. *Seland*, 2 Peters, 627.)


By the Court, RHODES, J. :

In 1860 Maria T. P. de Castro, one of the defendants in this action, commenced an action against the present plaintiff and others, to recover the possession of portions of the Rancho Pastoria de los Borregas, of which she claimed to be the owner under a grant from the Mexican Government, and in 1862 she recovered judgment, and in 1864 was put in possession, and she and her tenants, the other defendants to this action, have held the possession since that time. The grant was for two leagues within the exterior lines of the tract described in the grant, containing a larger quantity of land. The title of Maria T. P. de Castro was confirmed, and after she was put in possession under her judgment against the present plaintiff and others, the lines of her grant were surveyed and finally established under the authority of the United States, and the grant as surveyed, excluded the lands in controversy in this suit. The plaintiff sues to recover the possession of the lands from which he was ejected under the judgment, and the rents and profits of the lands from the time of the survey of the rancho, and certain damages for alleged injuries growing out of the action. He seeks this remedy under the provisions of the Act of 1858, entitled "An Act for the better protection of settlers on public lands in this State, and to secure the rights of parties in certain cases." (Stats. 1858, p. 345.)

The Act provides that a person ousted from the possession of land in an action at law, by a person claiming title under

a foreign grant, which shall thereafter be rejected, or so located as not to include the land recovered, may have his action against the plaintiff in the former action, and .the person in possession of the land, to recover back the possession of the land together with the rents and profits thereof from the time he was so ousted, and the costs and damages sustained by reason of the former action of ejectment. The ruling of the Court in sustaining the demurrer to the complaint, raises the question of the constitutionality of the Act.

The grant in this case, it was admitted, was in the usual form of Mexican grants in California, and was held by the plaintiff in the former action, and she did not claim title through any other source. While she was the holder of that title, and prior to the survey and segregation of the two leagues called for by the grant, she was entitled to the possession of the entire tract within the exterior limits designated in the grant. This was so held in *Ferris* v. *Coover*, 10 Cal. 589, and affirmed in many subsequent cases, among which are *Cornwall* v. *Culver*, 16 Cal. 423; *Riley* v. *Heisch*, 18 Cal. 198; *Mahoney* v. *Van Winkle*, 21 Cal. 552; *Carpentier* v. *Thurston*, 24 Cal. 268. Grants of this character confer a vested interest in the specific quantity of land designated, and though such title does not become attached to any particular parcel of the larger tract, until a survey of the specific quantity is made by the officers of the General Government, the grantee, his heirs and assigns are entitled to the possession of the whole tract out of which the quantity granted is to be taken, as against those entering without title, until such time as the specific quantity is segregated. This right is not a mere naked barren right of possession ; but as a necessary incident to the right of possession, the holder of the grant is entitled to the use and enjoyment, and the rents and profits of the land.

The present plaintiff, anterior to the Government survey, was a mere naked trespasser. He held no right in the land, and was not authorized by any law to make an entry, and consequently his tortious entry did not entitle him to the

possession or to the rents and profits of the land, or vest in him any right therein.

When the survey is made and the specific quantity is set off to the holder of the grant, the surplus comprised within the exterior boundaries, becomes public land. It is then, for the first time, open for settlement in the same manner as other public lands of the United States. At this point of time the statute of 1858, above mentioned, is invoked by the person who had entered and had afterward been ousted under a judgment in favor of the holder of the grant, from the lands which by the survey are excluded from the grant.

The statute cannot be maintained as conferring the right of possession, for the lands being public lands of the United States the right to the possession comes from the United States alone. The State can give a right of entry only where she claims as owner in her own right, or as the grantee of the General Government. The statute can be upheld only on the ground that it conserves the right of possession already held and affords a remedy for its violation. But no one was entitled to the possession before the survey, except those holding under the grant. The person who entered upon the land, in hostility to the grant, before the particular quantity granted was segregated from the larger area, took nothing by his entry, and he had no right therein to be protected by the statute. He can acquire no right therein until he has entered upon or purchased the land according to the laws of the United States. Had he remained in possession until the survey, the grantee could not maintain ejectment against him, for upon the survey being made the grantee's title to the surplus expired; but the settler's right commenced when the survey was made, and had its origin in the fact of his possession on and after that time. If it is urged that the grantee remaining in possession of the surplus lands of the survey is a trespasser, the answer is, that is a matter between him and the General Government; and admitting that he is a trespasser, that fact does not make the settler's entry, which was tortious as to the grantee when it occurred, rightful by rela-

tion, and convert it into a source of title. When it is admitted or found, that the settler held no right in the land at the time he was ejected under the judgment, at the suit of the holder of the grant, who was entitled to the possession, and that the settler has not subsequently acquired any right therein, the conclusion is inevitable—and no process of reasoning will lend any strength to it—that the Legislature of the State has no authority to empower him to recover the possession from any one, and that the Act in question, in so far as it purports to enable him to recover the possession, is unconstitutional and void.

The provisions of the Act, authorizing the defendant in the former action to recover the rents and profits of the land from the time he was ousted under the judgment, are also invalid. The plaintiff in that action being entitled to the possession of the land from the time of the recovery of the possession up to the survey of the rancho, was necessarily entitled to the rents and profits of the land during that period; and after that time, she and those claiming under her, while in possession, are entitled to the rents and profits until some one shows a better right to the possession. It will not be contended that the Legislature has the power to transfer the property of one person, without his consent, to another; and it makes no difference in this respect whether the object is attempted to be accomplished directly or indirectly. The objection is as insuperable, when the object is attempted to be accomplished by indirection, as in this case, by creating a responsibility for the use and enjoyment of the property, to one who has no right therein.

The statute does not seem to contemplate a recovery by the defendant in the former action of the costs of that action or of the damages sustained by reason of the action, except upon a recovery of the possession of the land; nor do we understand the plaintiff to claim that they are independent causes of action. The statute is, that he may have his action " to recover back the possession of any such land, with the rents and profits thereof,  *  *  together with all costs and

damages he may have sustained by reason of said action of ejectment, as provided in section two of this Act." The language of section two also shows that the " costs and damages" are accessories to the action to recover possession of the land. When the principal cause of action fails its accessories share the same fate.

Our conclusion is that the Act is unconstitutional. Mrs. Castro had a vested right to the possession of the land, and to take to her own use the rents and profits thereof, up to the segregation of the two leagues from the larger area; and, being in possession at and after that time, she is presumed to be rightfully in possession, and to be entitled to the rents and profits, until some one shows a right to the possession derived from the United States; and this also is a vested right in her until such better right is shown in the person who seeks to recover the possession. A vested right of property is not necessarily a perfect right, but it is enough that it is valid as against the person who seeks to divest it and acquire it for himself. The statute, if upheld, divests those rights and transfers them to those having no legal claim to them. The object evidently intended to be secured by the Legislature—that of relieving persons of the apparent hardship of being ejected from lands that should not be finally allotted to the grantee, though within the exterior limits of the grant—was incapable of accomplishment without abrogating the rule of law giving the grantee the possession of the whole rancho up to the time when the specific quantity granted is surveyed under the authority of the General Government.

Judgment affirmed.