[In Bank.—January 29, 1884.]

## THE MOUND CITY LAND AND WATER ASSOCIATION AND LOS ANGELES COUNTY BANK, Respondents, *v.* LOUIS PHILIP et al., Appellants.

Partition—Mexican Grant—Court of First Instance.—The decree of a court of first instance by which certain lands claimed under a Mexican grant were partitioned between the grantees, who took and held possession in accordance with the decree, is no defense to an action for the partition of a portion of the lands subsequently confirmed and patented to the grantees as tenants in common.

Appeal from a judgment of the Superior Court of the county of Los Angeles, and from an order refusing a new trial.

Action for partition. About ten thousand acres of land included in the decree of the court of first instance were omitted from the confirmation and patents, and the latter included several hundred acres not included in the decree. The remaining facts sufficiently appear in the opinion of the court.

*Thom & Stephens,* and *F. H. Howard,* for Appellants.

*R. M. Widney,* and *Brunson & Wells,* for Respondents.

McKINSTRY, J.—Vejar, Palomares, and Arenas obtained a grant of the "San José" rancho and the "Addition" thereto. Dalton acquired the interest of Arenas.

In 1846 certain proceedings were had before the judge of first instance, which (as claimed by appellant), resulted in a judgment of partition of the lands granted between Vejar, Palomares, and Dalton.

In 1853 Vejar and Dalton presented their petitions to the board of land commissioners for confirmation of the tracts claimed to have been set aside to them respectively by the judgment of partition, and Palomares presented his petition for the confirmation of his claim to an undivided one third part of the "San José" and "Addition." The decree of the District Court (on appeal from the commissioners) confirmed to each of the persons named an undivided one third part of the "San José" and "Addition." The appeal to the Supreme Court of the United States having been dismissed, and final survey of the lands made, each of the confirmees obtained a patent from the United States for an undivided one third part of the lands, the claims to which were confirmed by the decree. One of the patents was issued in December, 1875; the other January 26, 1875. This action for a partition of the lands described in the patents was commenced January 19, 1880.

It would seem, that, in the proceeding before him, the judge of first instance undertook to perform the task reserved to the political department of the government, to wit: the task of fixing definitely and finally the boundaries of land granted. He then divided the lands within such boundaries. His attempt to fix, for the government, the boundaries of the lands granted gave no additional force to his alleged judgment of partition. If juridical possession had previously been given, and its effect was to confine all the rights of the parties within the limits of such juridical possession, the judge could not, *pendente lite*, or by his judgment, extend their rights beyond such limits. They were not owners, as tenants in common or otherwise, of any lands finally ascertained to be part of the public domain. If juridical possession had not been given, the right of the grantees or their assigns to the temporary possession of all the lands, as the same appeared from the diseño and

grant, could not be extended beyond the exterior limits thus appearing.

Even if the survey, made under the supervision of the judge of first instance in the partition proceedings, can be treated merely as an ascertainment of the exterior boundaries as the same were laid down on the diseño, and described in the grant and petition therefor, the partition of the lands temporarily possessed by the grantees, or their assigns — that is to say, of the lands which they had the right to possess in common until the lands granted should be measured by the government — was operative only until such measurement. A decree of partition does not give a new title to the parties among whom the possession is distributed in severalty. (*Wade* v. *Deray*, 50 Cal. 376.) Neither the judge of first instance, nor the parties in interest, could then know where, within the exterior limits, the government would select the specific tract in and to which their complete title would ultimately vest. Until such selection the grantees, and their successors in interest, retained, as against trespassers, a right to the possession of the whole. (*Ferris* v. *Coover*, 10 Cal. 589.) But this possession they held subject to the power of the government to segregate a specific tract, and thus to deprive them of all right beyond the limits of such tract. Like every other judgment, the judgment of partition (if there was one), was binding and conclusive only with respect to its subject-matter. It was the right to the temporary possession, previously held in common, which was affected by the judgment. The lands beyond the boundaries which the United States, as successor of Mexico, established, continued to be government property until the boundaries were so established. In the mean time the grantees occupied to the exterior limits by license of the government; a license which was revoked, as to lands without the final survey, when the final survey was approved. The right of possession was not an equitable right which ripened into a legal title to the *same lands* upon final measurement. It was contingent and *limited in time* as to the lands which should be excluded by the final measurement. The judgment in partition did not and could not anticipate the action of the political power and divide in advance the lands which should subsequently be surveyed. It operated upon the

existing *status,* and gave to each of the parties the right to enjoy in severalty the same temporary possession of all the lands within the exterior limits, which they had previously enjoyed in common.

Until final survey by the United States of the "San José" and its "Addition," there was no specific tract to which attached a complete proprietorship in favor of the grantees, and those deriving from them. Whatever the nature of the grant or grants, the petitioners to the board of land commissioners submitted themselves to the jurisdiction of the tribunals created by the Act of 1851, for the ascertainment of the rights protected by the treaty, and the patent they obtained is a solemn record of an adjudication, binding upon them, that the lands granted were never finally segregated from the body of the public lands by the Mexican government.

It would seem to be sufficiently manifest that the judgment of partition of lands, without the limits of the final survey afterward made, had effect, even as to the parties to it, only while their occupation lasted with the consent of the government. As the decree did not provide for the separate disposition of the specific portion of the lands, with respect to which the rights of the grantees ultimately became perfect, the decree, as a whole, ceased to operate when the boundaries of such specific portion were determined.

Suppose a decree of partition between tenants in common for a term of years, and, at the expiration of the term, that the lessees should acquire from the lessor the fee to a specific portion of the land demised; would it be said that the decree of partition would estop one of the grantees from claiming an undivided interest in the lands conveyed? Or, take a case more proximately analogous to the one at bar. Two persons asserting an equity in lands agree to a decree of partition. Afterward they secure from the holder of the legal title a conveyance of his title to a portion only of the lands which lies entirely within the limits set apart to one of them by the partition. Does the other get nothing by the conveyance?

Three "grantees" of the former government have, by its permission, the common possession of a tract, with full knowledge that the government may take from them such possession,

except in a smaller tract, and confer upon them the full proprietorship of such smaller tract. A decree is entered parting the possession, so that each shall possess exclusively a specific portion of the larger tract. In the case before us between six hundred and seven hundred acres of the land patented was not partitioned by the judge of first instance, while about ten thousand acres, *not* embraced within the tract patented, were set apart to the parties by the decree of partition. Not only was the *right* or estate, which was changed by the judgment from a common to a specific right, different from that asserted by the parties to the present action, but the tract of land which is the subject of the present action is a different tract from that of which the common possession was made a separate possession by the judgment.

The alleged separate occupation of the respective parties, whether it referred to the judgment of partition, or to a supposed oral agreement for partition, must, in the absence of evidence to the contrary, be held to have had relation to the temporary possession, and right of possession, of which we have spoken.

It is well settled, as argued by counsel for appellant, that confirmation and patent, under the Act of 1851, only settle the legal title, and that such title inures to the benefit of the parties beneficially interested. But the acceptance of this proposition only brings a return of the question : Had appellant acquired a title, legal or equitable, to a specific portion of the land described in the complaint, which he could assert against the co-patentee of his grantor? This inquiry we have tried to answer.

The precise question we have been considering has never been determined, but intimations have been made by our predecessors which indicate that they were in accord with the views we have expressed. (See *Hathaway* v. *De Soto*, 21 Cal. 191; *Mahoney* v. *Van Winkle*, 21 Cal. 580; *Carpentier* v. *Thurston*, 24 Cal. 268.)

Some of the findings are somewhat informal, but the court passed upon the material issues.

Judgment and order affirmed.

Thornton, J., McKee, J., and Sharpstein, J., concurred.

MYRICK, J., dissented.

Ross, J., being disqualified, took no part in the decision.

Petition for a rehearing denied.