## J. G. TREADWAY *v.* CHARLES D. SEMPLE.

CASE COMMENTED ON.—*Thornton* v. *Mahoney,* 24 Cal. 582, commented on and explained, and erroneous citation corrected.

LOCATION OF MEXICAN GRANTS.—The system of locating, by final survey, Mexican and Spanish grants of land in California, under the Act of Congress of March 3d, 1851, was essentially modified by the Act of Congress of June 14th, 1860.

DECREE OF COURT UPON SURVEY OF MEXICAN GRANT.—The proceedings had under the Act of Congress of June 14th, 1860, after the return of a survey and plat of a Mexican grant into the District Court, are strictly judicial in their character, and the decree rendered by the Court upon the survey is *res adjudicata,* and final and conclusive upon the rights of all those who become parties to it.

DECREES CONFIRMING TWO SURVEYS OF SAME LAND.—If after a decree confirming a survey of a Mexican grant, made in pursuance of the Act of June 14th, 1860, a decree is made confirming a survey of another prior grant covering the same land, and the confirmee in the first decree is a party to the second decree consenting thereto, he is bound by it.

APPEAL from the District Court, Tenth Judicial District, Colusa County.

The plaintiff recovered judgment in the Court below, and defendant appealed.

The other facts are stated in the opinion of the Court.

*Charles D. Semple,* in *pro per.,* and *P. L. Edwards,* for Appellant.

The official survey of the Colus grant, being first approved and adopted by the United States District Court, from that time gave to appellant a perfect legal title to the land embraced in it, which could not be afterwards disturbed by any action of the Government. (*Waterman* v. *Smith,* 13 Cal. 373, and authorities there cited; Act of Congress, June 14, 1860; *Brewer* v. *Minturn,* 24 Cal. 645.)

The doctrine of relation has no application to this case. The parties had no privity the one with the other, but both had a just claim to the application of that doctrine as against intervening claimants and trespassers. (*Jackson* v. *Bard,* 4 Johnson, 234; 1 Johnson's Cases, 90, and Note; *Heath* v. *Ross,* 12 Johnson, 140; *Barnes* v. *Stark,* 4 Cal. 413.)

The claimants of "Colus" and "Jimeno" set forth in their petitions that they had claims against the Government. On the same day their claims are admitted to be valid. They both then demand that the proper officers shall point out the particular tract of land to which they were entitled, (since they cannot do this themselves—see *Fremont's Case,*) and pass to them the fee which was still in the United States. On the 2d day of February, 1861, the officer having the power of final approval, passed the fee of two leagues by metes and bounds to the Colus claimant. This act put a perfect legal title in the claimant which could not be disturbed by any subsequent action of the Government. (See *Waterman* v. *Smith,* 13 Cal.; *Fremont's Case,* 17 Howard, and cases cited.) Two months afterwards the same officer attempted to pass the fee of a part of the same land to the claimant of Jimeno. Was this last act a nullity? Was there any title in the United States to pass?

*A. C. Whitcomb,* for Respondent.

It is quite certain that until the Colus survey was filed in Court it was a mere private survey, and that its character

remained unchanged until the 2d day of February, 1861, when it was approved by the Court. Indeed, no validity is claimed for it until then.

Is it not equally certain that on the 12th day of April, 1861 —the date of the order of appeal therefrom—it was not final or conclusive? From that time up to December, 1864, did not its inconclusive character remain unchanged? Was it not liable to be ordered set aside, and another survey approved in its place, just as the Supreme Court of the United States at its last term ordered the Sutter survey to be set aside, and an entirely different one approved?

So far from such a survey making "a perfect legal title," it has been held by this Court, over and over again, (commencing with *Thornton* v. *Mahoney et als.*, 24 Cal. 583,) that it was not operative for any purpose whatever until the appeal was disposed of by the appellate Court.

The survey law of June, 1860, provides for interventions; and this appellant was an intervenor in the Jimeno case, appearing in person in open Court, and consenting to the decree. And so consenting, the decree bound every interest he had in the land, whether under Jimeno or Colus, under a pre-emption or a swamp land location. It was adjudged thereby, not only as between the claimants and the United States, but as against the intervenor, Charles D. Semple, that the land embraced in the survey (approved by that decree) was truly, properly, and correctly appropriated to the Jimeno grant of November 4th, 1844; and that said grant rightfully attached to the identical eleven square leagues of land embraced and described in said survey. In fact, that said land was the identical tract granted in 1844 to Jimeno; and, of course, if granted to him in 1844, it could not have been granted to Bidwell in 1845; or if any part of it was included within the description of any grant in 1845 to Bidwell, such latter grant was to that extent inoperative and of no effect.

By the Court, SAWYER, J.

This is an action brought under the provisions of section two hundred fifty-four of the Practice Act by the party in possession of Lot No. 1, in Block 32, in the Town of Colusa, for the purpose of determining a claim of title adverse to him, made by the defendant. The complaint—which is verified—sets out with great particularity a deraignment of the respective titles under which both of the parties claim. None of the material allegations of the complaint are denied, and they are, therefore, for the purposes of the action to be taken as true. Both claim under grants from the Mexican Government —the plaintiff under a grant to Manuel Jimeno, called the "Jimeno Grant"—the defendant under a grant to John Bidwell, called the "Colus Grant." Both have been confirmed, and finally located so as to include the lot in dispute, and the question is, which party has the better title?

The grant to Jimeno of eleven leagues within larger boundaries, as shown by the record, was made November 4th, 1844; that to Bidwell of four leagues within the same larger area, October 4th, 1845. The claimants under the Jimeno grant presented their claim to the Board of Land Commissioners for confirmation March 24th, 1852, in pursuance of the provisions of the Act of March 3d, 1851; the claimants under the Colus grant, March 31st, 1852. The Jimeno grant was confirmed by the Board January 10th, 1853; the Colus grant rejected October 25th, 1853. Both cases having been appealed to the District Court for the Northern District of California, the decree confirming the Jimeno grant was affirmed, and that rejecting the Colus grant reversed, and the grant confirmed on the same day—July 5th, 1855. Both cases were again appealed to the Supreme Court of the United States, and at the December term, 1855, of that Court, the decree confirming the Jimeno grant was finally affirmed, and the appeal in the case of the Colus grant dismissed—the decree of confirmation thereby becoming final. The Jimeno grant was afterwards, in 1858, surveyed so as to include the lot in contro-

versy, which survey was approved by the United States Surveyor-General for California, November 4th, 1858. Said official survey was, on application of defendant, Semple, claimant under the Colus grant, by the United States District Court ordered to be returned into Court, and having been filed, the said Semple, by leave of the Court, granted on his own motion, on the 26th day of September, 1860, under the provisions of the Act of Congress of June 14th, 1860, filed in the proceeding his intervention, as he alleged, " for the protection of his rights and interest as owner and claimant of Rancho Colus finally confirmed to him," and filed therein his written exceptions to the said official survey of the Jimeno Rancho, on the ground that it embraced lands (of which the lot in question was a part) claimed by him as being within the limits of the Colus Rancho. Testimony having been taken and arguments of the respective counsel had, the Court by order directed said survey to be set aside and another to be made in accordance with specifications in said order contained.

" On the third day of April, 1861, the said United States Surveyor-General returned to and filed in said Court in said proceeding a certified copy of the original plat of an official survey of the said Jimeno Rancho, made in conformity with the said order of said Court, and marked as approved by the said United States Surveyor-General, on the twenty-sixth day of March, 1861. On the sixth day of April, 1861, on the motion of the claimants' counsel to confirm said last named official survey, ' the counsel for the respective parties and Charles D. Semple, intervenor, in person appearing in Court and consenting to said motion and said official survey,' the said United States District Court rendered and entered a decree finally confirming, approving and adopting the said survey as the true, proper and correct survey of the said land finally confirmed to the said Larkin and Missroon, as the Jimeno Rancho as aforesaid." From this decree thus entered no appeal was taken either by claimants or defendant, Semple; but said Semple, as intervenor, in April, 1861, " especially waived, in writing under his hand, all right of appeal from

said decree." On the 12th of April, 1861, the United States appealed, which appeal was dismissed by the Attorney-General of the United States, May 29th, 1862, and the survey therefore became final and a patent issued thereon to the claimants under the Jimeno grant, July 18th, 1862, which patent embraces the premises in question.

A survey of the Colus grant was in the meantime made by the Surveyor-General, and also approved November 4th, 1858. Said survey did not embrace the land in controversy, or any land included in the survey of the Jimeno grant before mentioned, approved by the Surveyor-General on the same day. This survey was also on the application of said Semple returned into Court, and, October 17th, 1859, set aside, the said Court ordering a new survey to be made, " with the right to the said Semple to select a location of two square leagues of land within the exterior limits of the said Colus grant." November 5th, 1859, said Semple notified the Surveyor-General that he had elected the two square leagues of land embraced and contained in a certain private survey made in October, 1858, and that he consented that said last named survey should be adopted by the Surveyor-General as the proper location of said grant, and that the same be returned into Court in the room and stead of the new one directed to be made by said order of said Court. The said survey and another having been returned into Court, the survey so elected was confirmed by said District Court, February 2d, 1861. An appeal from said order of confirmation to the Supreme Court of the United States was taken by the United States, April 12th, 1861, and subsequently dismissed by the Attorney-General at the December term, 1864, of said Court. Said survey embraces the lot in question, but no patent has yet issued.

Although plaintiff has the elder grant (which was also first presented to the Board of Land Commissioners for confirmation,) and is in most respects prior in point of time, yet the defendant insists, that, under the principles advanced in *Waterman* v. *Smith*, 13 Cal. 373, his title is to be preferred, because

83

the order confirming his survey was in fact entered by the District Court before the order confirming plaintiff's survey; that notwithstanding plaintiff's survey became final, and his patent issued long before the defendant's survey became final by dismissal of the appeal, that upon such dismissal his confirmation by relation took effect from the date of the decree of the District Court, and that his land was thereby first segregated.    The claimant, on the contrary, insists that it was held by this Court in *Thornton* v. *Mahoney,* 24 Cal. 582, that the decree confirming the survey was not operative until the appeal was disposed of by the appellate Court, and that the finality of the respective decrees confirming the survey in these cases must therefore date from the time of the dismissal of the respective appeals.    The question in that case was not whether, when the appeal is dismissed or the decree affirmed by the appellate Court, the rights of the parties become fixed by relation from the date of the decree of the District Court thus made final.    It was simply whether, pending the appeal, the decree appealed from is to be regarded as finally locating the land, within the meaning of the provisions of the Act passed by the Legislature of California, April 26th, 1858, entitled " An Act for the better protection of settlers on public lands in this State, and to secure the rights of parties in certain cases " (Laws 1858, p. 345,) so as to enable parties to recover the lands under said Act before a final disposition of the appeal.    There is an error in a reference in the case cited which may tend to produce some obscurity, and which we now desire to correct.    The phrase, " the Act of Congress of June 14th, 1860 " (page 582,) should read, " the Act of the Legislature of California of April 26th, 1858."    We also take occasion, while the case is before us, to supply an inadvertent omission in the second line of page 584.    The sentence should read, " It is not the practice for the United States when appellants in cases of appeals from the decree of the District Court," etc.

Without deciding the question, we shall, for the purposes of this decision, assume that the defendant's location, on dis-

missing the appeal, became final by relation from the date of
the decree confirming his survey by the District Court, and
that the final decree is equivalent to a patent. Assuming these
points, and accepting the decision in *Waterman* v. *Smith* as
correctly determining the matters in controversy in that case,
it does not follow that the principles of that decision are
applicable to the facts of the case now under consideration.

The grant in question in *Waterman* v. *Smith* was located by
the Executive Department of the Government in pursuance of
the provisions of the Act of Congress of March 3d, 1851.
But the system of locating grants was essentially modified by
the Act of June 14th, 1860, and the surveys of the grants in
controversy in this case were finally confirmed under the pro-
visions of that Act. The Act provides that, when the Sur-
veyor-General has completed and platted the survey of any
confirmed claim, he shall give notice of the fact in some news-
paper for a prescribed period of time, and that during that
time the survey and plat shall remain in his office subject to
inspection; that upon the application of any party interested,
the said survey and plat may, upon the order of the District
Court of the district within which the land is situate, be
returned into said " District Court for examination and adjudi-
cation;" that notice shall be given in a mode prescribed " to
all parties interested, that objection has been made to such
survey and location, and admonishing all parties in interest to
intervene for the protection of such interest;" that said par-
ties in interest, after having intervened, may proceed to take
testimony and contest the same, and that, " on hearing the alle-
gations and proofs, the Court shall render judgment thereon;
and if, in its opinion, the location and survey are erroneous, it
is authorized to set aside and annul the same, or correct and
modify it." It then provides for an appeal from the decree
finally confirming the survey. (12 U. S. Stats. at Large, 33,
34.) The proceedings had under this Act after the return of
the survey and plat, are strictly judicial in their character.
The parties interested have an opportunity to be heard, and
those appearing actually are heard, and their rights litigated

and adjudicated; and when thus finally determined we see no reason why the matters determined should not, like all other judicial determinations upon points directly in issue, be regarded as *res adjudicata*, and be final and conclusive upon the rights of the parties. Such is the opinion of the Supreme Court of the United States, expressed in the recent càse of *Rodrigues* v. *United States*, 1 Wallace, 587. In 1838 a provisional grant of a league of land was made to Ramona Sanchez, "known by the name of 'Butano,' which tract, in 1844, Governor Micheltorena granted to her, reciting his deed to be a ratification of the provisional title given to her in 1838." Rodrigues claimed under this grant. In 1842, subsequent to the provisional grant, a grant was also made to Simeon Castro. Castro's grant had been confirmed, surveyed and patented prior to June 14th, 1860, and to his proceedings neither Sanchez nor Rodrigues was a party. Sanchez's grant having been confirmed and subsequently surveyed, the survey and plat were ordered to be returned into Court, and after a contest there under the provisions of the Act of 1860, to which proceedings the claimants under the Castro grant made themselves parties—the grant was finally located in part upon lands already surveyed and patented to the claimants under the Castro grant. In reviewing this final location on appeal the Supreme Court of the United States—Mr. Justice Miller delivering the opinion—say:

"It is objected to this location of the grant that it places it on land which has already been confirmed, surveyed and patented to the representatives of Castro. The answer to this is, that we are called on in this proceeding to determine where the grant to the present claimant ought rightfully to be located, who was not a party to any of the proceedings by which Castro's claim was confirmed, surveyed or patented, and is not therefore bound or concluded by either the decree, survey, or patent, as expressly enacted by the fifteenth section of the Act of 1851. For Castro's survey was made before the Act of 1860, and there was no opportunity for this claimant to con-

test its location.   And lastly it may be added, that the holder of the Castro claim has made himself a party to the present proceeding, *and must be bound by its result.*"

Now the representative of the Castro claim held a subsequent grant, which was first finally segregated and patented. Under the Act of 1860, he made himself a party to the subsequent proceedings, for locating a prior grant to Sanchez, which was, notwithstanding his opposition, located in part upon lands already patented to him.   This is precisely the case under consideration, and if Castro's representatives by making himself a party to the proceedings, " must be bound by its results," as observed by Mr. Justice Miller—and we think he must—then defendant, Semple, is concluded in this case.   Plaintiff's is the elder grant, and it was first presented for confirmation to the Board of Land Commissioners.   Both claims having been surveyed so as not to interfere, they were ordered to be returned into Court, " for examination and adjudication," on application of defendant.   On leave of the Court he intervened in plaintiff's proceedings; had plaintiff's survey—and in another proceeding his own—set aside, and new surveys ordered; and succeeded in getting his second survey first confirmed.   Afterwards plaintiff's survey came up for determination and although embracing the lot in question, which had already been included in defendant's survey, on motion of plaintiff's counsel to confirm his survey, the Court rendered a " decree finally confirming, approving and adopting the said survey as the true, proper and correct survey of the said land finally confirmed as the Jimeno Rancho, ' Charles D. Semple, intervenor, in person appearing in Court and consenting to said motion and official survey.' "   And said defendant, Semple, also afterwards on the same day " waived in writing, under his hand, all right to appeal from said decree."   This must be regarded as an adjudication between the parties, and with the consent of defendant, that the plaintiff's prior grant is properly located; and that the defendant's subsequent grant to the extent of the interference was improperly located, and

this determination is final and conclusive upon the rights of the parties. It follows that the title is in the plaintiff and the judgment must be affirmed.

And it is so ordered.