## CHARLES D. SEMPLE *v.* SAMUEL M. WRIGHT.

CONFIRMATION OF GRANTS OVERLAPPING EACH OTHER.—If two Mexican grants of land, made to different persons, are confirmed, and surveyed so as to overlap each other in part, and the owner of one becomes a party to the proceedings relating to the confirmation and survey of the other, he is bound by the proceedings, and estopped from afterwards denying that this grant was properly located.

STIPULATION CONCERNING JUDGMENT.—A stipulation between parties to an action as to the kind of judgment to be entered, whatever force it may have in regulating the judgment to be entered, does not impair the effect of the judgment which is entered, even if not entered in accordance with the stipulation.

FORMER JUDGMENT IN BAR MUST BE PLEADED.—If two Mexican grants are so confirmed at different times as to overlap each other, and the owner of the one confirmed last is a party to the proceedings confirming the other, and the owner of the one confirmed first becomes a party to the proceedings resulting in the last confirmation, and fails to set up the first confirmation as a bar to having this grant confirmed so as to cover the same land, he cannot afterwards attack the last decree in a collateral proceeding.

JUDGMENT BY CONSENT.—One who is a party to an action and consents to a judgment, cannot afterwards attack this judgment in a collateral proceeding.

APPEAL from the District Court, Tenth Judicial District, Colusa County.

This was an action to recover possession of a lot in the Town of Colusa. The complaint was in the usual form. The answer contains a denial of all the allegations of the complaint, and sets up title in the defendant under the Jimeno Grant. The plaintiff proved title to the demanded premises under the Colus Grant, and the defendant showed title under the Jimeno Grant. The Jimeno Grant was of eleven leagues, and bore date on the 4th day of November, 1844, and was presented to the Board of Land Commissioners for confirmation on the 24th day of March, 1852, and confirmed by the Board on the 10th day of January, 1853. It was confirmed by the District Court of the United States on the 5th day of

July, 1855, and by the Supreme Court of the United States at its December term for the year 1855.

The Colus Grant was of two leagues, and bore date on the 4th day of October, 1845, and was presented to the Board of Land Commissioners for confirmation on the 31st day of March, 1852, and rejected by the Board on the 25th day of October, 1853. It was confirmed by the District Court of the United States on the 5th day of July, 1855, and an appeal from the decree of the District Court was dismissed by the Supreme Court of the United States at its December term for the year 1855. The final official survey of the Jimeno Grant was confirmed and adopted on the 6th of April, 1861, by a decree of the District Court, and an appeal from that decree to the Supreme Court was dismissed on the 29th day of May, 1862; upon this final survey a patent was issued to the claimants on behalf of the United States, bearing date on the 18th day of July, 1862.

The final official survey of the Colus Grant was confirmed and adopted on the 2d day of February, 1861, by a decree of the District Court, and an appeal from that decree to the Supreme Court was dismissed at the December term of said Court for the year 1864. The final survey and patent of the Jimeno Grant, and the final survey of the Colus Grant, cover the lot in question.

While the final survey of the Jimeno Grant was before the District Court for confirmation, according to the provisions of the Act of Congress of the 14th day of June, 1860, C. D. Semple filed in said Court his intervention in the words and figures following, to wit:

" This day came Charles D. Semple, before me, Clerk of said Court, and made oath that heretofore, in this Honorable Court, there was a grant of eleven leagues of land called the Jimeno Grant, situated in the Counties of Colusa and Yolo, on the west bank of the Sacramento River, confirmed to the above named defendants; that before the final confirmation of said grant the said Missroon sold his entire interest therein; that the said Lar-

kin also sold, before his death and before the final confirmation, his entire interest except about two thirds of one league, which this affiant is informed now belongs to the heirs of the said Larkin; that this affiant is now the owner of about two thirds of one league of said grant, claiming title under said Larkin and Missroon by mesne conveyances from them. Affiant further says that Missroon is an officer in the United States Navy, and never took any part in the management of the case, but that Larkin had the entire control of it until the final confirmation. A controversy then arose between some of the principal owners, when Larkin retired from the case, leaving the management of the survey to this affiant and some two others. A survey was ordered and made by the United States Surveyor-General for the State of California, which was protested against by this affiant, and the matter was referred to the Secretary of the Interior, and said survey was set aside and a new one ordered, which last survey was made in the month of October, 1858, and approved by the Surveyor-General aforesaid. Now this affiant says, that by this last approved survey said Jimeno Grant is not properly located; that it is located to the extent of two leagues upon land claimed by the owners of the Colus Grant, containing two leagues, finally confirmed to this affiant; and this affiant believes that the title to the Colus Grant is superior to the title of the Jimeno Grant to the same land, so that if the title to the Colus Grant shall prove to be the superior and better one, then this affiant will lose about one half of his aforesaid interest.

" Affiant further says that these is more than eighteen leagues contained within the map or *diseño* of the said Jimeno Grant, and that the whole maximum of land may be surveyed within the *diseño* without interfering with the land claimed by the claimant of the Colus Grant.

" Therefore this affiant prays that an order may issue out of this Honorable Court, directing that the said approved survey may be returned into this Honorable Court for its adjudication and decision."

While the final survey of the Colus Grant was before the said United States District Court for confirmation, according to the provisions of the Act of Congress of the 14th June, 1860, George Hagar filed in said Court his intervention in the words and figures following, to wit:

"In the District Court of the United States for the Northern District of California. *The United States* v. *Charles D. Semple, Claimant.* No. 28.

"Now comes George Hagar, by leave of the Court first had and obtained, and intervenes in this proceeding, and excepts to the approved survey (containing eight thousand eight hundred and seventy-six and two one-hundredths acres) of the Colus Rancho filed in this case, because it embraces land granted to Manuel Jimeno (the grantor of said Hagar) by the Mexican Government, in the year 1844, and before the date of the Colus Rancho; and the said George Hagar, intervenor herein, in support of said exceptions, alleges and says, etc.' [Here the intervenor goes on at great length to give many reasons why the Colus survey should not be approved, and then proceeds.] And the said intervenor would further represent that he is now the legal owner and holder, by good and sufficient mesne conveyances from the said Larkin and Missroon, of the larger portion, to wit: more than five thousand acres of the land, so embraced as aforesaid, by the said survey of the said Colus Rancho." [Then follows other statements immaterial to the issues in this case.]

An order was made by the United States District Court, on the 5th day of January, 1861, allowing the said Hagar to withdraw his intervention in the said Colus survey case.

An agreement was entered into on the 4th day of January, 1861, between C. D. Semple and George Hagar, in the words and figures following:

"In the District Court of the United States for the Northern District of California. *The United States* v. *Larkin and Missroon, Claimants for Jimeno Rancho.* No. 23. Whereas,

Charles D. Semple, claimant of the Colus Rancho, case No. 28, has intervened under the provisions of the Act of Congress, approved June 14th, 1860, in the matter of the survey and location of the lands claimed in the above entitled cause of Larkin and Missroon; and whereas, George Hagar, claiming a portion of the Jimeno Rancho, has intervened in the matter of the survey and location of the Colus Rancho; Now, therefore, to dispose of said interventions and the exceptions to said surveys, it is hereby stipulated and agreed between the said Hagar and Semple, intervenors as aforesaid, that the said Hagar, intervenor in the matter of the location and survey of the Colus Rancho, shall and does hereby withdraw his exceptions to the said survey, and dismiss his petition to intervene. And the said Charles D. Semple, intervenor as aforesaid in the said Jimeno case, shall and does hereby withdraw his intervention in the matter of the survey and location of the said Jimeno Rancho, save and except for the sole purpose of opposing its location over and upon the survey of the said Colus Ranch, should such effort be made. And the said Semple, claiming a portion of the said Jimeno Rancho, hereby further agrees to co-operate with A. C. Whitcomb, attorney of record in the said Jimeno case, to obtain such location and survey of the said Jimeno Rancho as the said Whitcomb may think legal and proper, and to the interest of the owners thereof, provided always said location be not made or attempted upon or over the survey of the said Colus Rancho.

"Dated at San Francisco this 4th day of January, 1861.

(Signed)      "GEORGE HAGAR, Intervenor.
              "C. D. SEMPLE, Intervenor."

At the time he intervened in the Jimeno case, C. D. Semple was the owner, by mesne conveyances from Larkin and Missroon, of one undivided third part of the upper or northern two square leagues of the Jimeno Grant; and these said two leagues, according to the patent of the Jimeno Grant, overlap and interfere with the Colus approved survey to the extent of more than five thousand acres.

When the decree was rendered finally confirming the survey of the Jimeno Grant, C. D. Semple, intervenor, was present in Court and consented to said decree.

Judgment was rendered by the Court below in favor of the defendant, and the plaintiff appealed.

*Bowie & Catlin,* for Appellant.

The Jimeno is the elder *grant,* but not the elder *title,* to the land segregated by the survey decree of the Colus. Both were inchoate titles, being grants for certain quantities, the one for eleven the other for two leagues, within exterior limits containing nineteen leagues, and were not perfected so as to attach to particular and definite tracts by segregations under the former Mexican Government. The inchoate characters of the two grants continued until they ripened into perfect titles by proceedings in each case under the Acts of Congress of 1851, and of June 14th, 1860. The appellant claims that the Colus Grant became a perfect title to the identical two leagues embraced within the designated boundaries of the survey decree upon the 2d day of February, 1861. And that the Jimeno Grant was not perfected until the 6th day of April, 1861, and that, in so far as the Jimeno overlaps the Colus, it is good for naught; that to the extent of such overlapping, the Jimeno carries no more title than a subsequent deed from the same grantor would carry to such portion of land as it might contain which had been granted away in a prior deed. In support of this proposition, when applying it to these two grants, and in attempting to demonstrate that a younger grant may be a better title to a given lot of land, we depend mainly upon what we deem the virtue and effect of the Act of June 14th, 1860. Besides, as an abstract proposition of law, it is certain that the later grant, with definite boundaries, will prevail over the elder with quantity only certain, the two being inside of a designated area large enough to satisfy both. (*United States* v. *Fremont,* 17 How. 558.)

Hagar confessed the judgment in the Colus case without qualification, by withdrawing his intervention. Semple con-

sented to the Jimeno decree, and what quality that consent gave to the decree must be determined by the pleadings in the case. His plea alleged that the survey would deprive him of a portion of his interest in the Jimeno lands, and he consented to such deprivation. This is the only effect of that decree upon him. If anything were wanted to prove what we contend for, we could invent nothing more effective than the stipulation which was intended to and did settle and fix the exact character and effect of both decrees. (*Sizer* v. *Miller*, 2 How. Pr. 44; *Miller* v. *Harris*, 19 Cal. 278.) Hagar, the Jimeno claimant, performed his part of the stipulation on the following day, and the Colus survey was accordingly approved on the second of the next month. Afterwards, upon the coming in of the Jimeno survey, Semple performed his part of it, by consenting to the decree in that case. When this agreement was entered into, Semple, as Colus claimant, owned eight thousand eight hundred and seventy-six acres, and also owned to the extent of two thousand nine hundred and fifty-nine acres in the Jimeno. There was more than room enough within the exterior bounds of the grants for him to obtain both amounts. Hagar, to secure Semple's consent to such *form* of survey of the Jimeno as he desired, agreed that the two leagues belonging to the Colus should be first segregated and confirmed. This having been settled and accomplished by the final decree in the Colus case on the 2d of February, Semple and Hagar remained in Court as parties in the Jimeno case. They were both out of Court so far as the Colus was concerned, and the Colus itself was out of Court so far as the Court was concerned. Semple then, living up to the full spirit of his agreement, as he was bound to do, agreed to the Jimeno survey, and waived the reservation which he had made for his own protection as a Jimeno owner. If the agreement, by reason of such reservation, seemed, in the first instance, to give him an undue advantage, his after waiver of the reservation made it mutually fair and beneficial to both parties. To hold that Semple's consent in the Jimeno

case should bind him, and that Hagar's consent in the Colus case should be ineffectual for the purpose which it was understood to accomplish by both parties, would destroy the mutuality of the contract by giving to one party and denying to the other all the benefits of it.

By the Court, RHODES, J. :

The case is presented on a statement which contains a summary of the pleadings and the findings and judgment. ·The contest grows out of a conflict between the surveys of the Jimeno Rancho and the Colus Rancho. The facts in relation to the title to each of those ranchos, the confirmation of the titles, the official surveys, the confirmation of the surveys by the District Court, the appeals to the Supreme Court of the United States from the decrees confirming the surveys, and the dismissal of the appeals are substantially the same as are stated in *Treadway* v. *Semple*, 28 Cal. 652. We did not, in that case, nor do we in this, intend to lay down any new rules or principles for the government of that very perplexing class of cases growing out of a conflict of surveys, but wish simply to give effect to the Act of Congress of the 14th of June, 1860, in regard to the survey and location of private land claims in California, and in so doing, to follow the construction of the Act adopted by the Federal Courts.

In *Rodriguez* v. *United States*, 1 Wal. 587, those holding title under the Castro Grant, contested the survey of the Sanchez Grant. The Castro Grant had been confirmed, surveyed, and patented prior to the passage of the Act of Congress of June 14th, 1860. To the objection that the location of the Sanchez Grant could not be sustained, so far as it conflicted with the Castro Grant as surveyed and patented, the Court made two answers. First—That the pending proceedings were instituted to determine where the Sanchez Grant ought rightfully to be located, and as the claimant of the grant was not, and had no opportunity to be, a party to any of the proceedings by which the Castro Grant was confirmed, surveyed,

or patented, he was not bound by either the decree of confirmation, the survey, or patent; and Secondly—That those claiming title under the Castro Grant had made themselves parties to the pending proceedings, and must be bound by its results. The language of the Court plainly indicates, that it was considered that the second was a complete answer to the objection raised to the location of the Sanchez Grant; and this was accepted as the correct doctrine by this Court in *Treadway* v. *Semple.* In that case, in considering the effect of the final confirmation of the Jimeno survey upon the title of Semple, the defendant in that case and the plaintiff in this, as determined by the prior confirmation of the Colus survey, it is said : " This must be regarded as an adjudication between the parties and with the consent of the defendant, that the plaintiff's prior grant is properly located, and that the, defendant's subsequent grant to the extent of the interference was improperly located, and this determination is final and conclusive upon the right of the parties."

The plaintiff in this case does not controvert the doctrine announced in that case, and indeed he relies upon it to show title in himself under the confirmation of the survey of the Colus Grant ; but he endeavors to avoid its force, when invoked to uphold another and subsequent confirmation, to which proceeding he was a party. The facts of that case and this are the same, so far as they have any bearing on this question, except that in this case it is found that the plaintiff and George Hagar, the then claimant of the Jimeno Grant, entered into a stipulation on the 4th of January, 1861, before the confirmation of the survey of either rancho, by which Hagar withdrew his intervention in the matter of the survey of the Colus Ranch ; and Semple withdrew his intervention in the matter of the survey of the Jimeno Rancho, " save and except for the sole purpose of opposing its location over and upon the survey of the said Colus Rancho, should such effort be made." The stipulation, whatever might have been its value in regulating the decree to be entered, could not by any possibility control or impair the conclusiveness or effect of the decree *after it was*

*entered.* And besides this, the fact appears in this case, as in *Treadway* v. *Semple,* that when the decree confirming the survey of the Jimeno Grant was pronounced, Semple, intervenor, was present in Court and consented to said decree.

It is urged with much earnestness, that as the claimant of the Jimeno Grant was a party to the proceeding for the confirmation of the survey of the Colus Grant, he is bound by the decree, and that it is conclusive as to him, and is beyond the reach of attack in his subsequent proceedings to confirm the survey of the Jimeno Grant. If such was the case, he should have set up that fact as an objection to the confirmation of the survey of the Jimeno Grant; but if he failed to present that objection, or if presented it was overruled, he could not afterward rely upon that fact as a ground of collateral attack upon the decree. He would occupy no better position in that respect than would a defendant to an ordinary civil action, holding a good bar to the action, which either is not presented or is overruled by the Court. And besides this, his objections, whatever they may have been, are removed by his consent to the decree.

It is impossible to see how the plaintiff can avoid the authority of *Treadway* v. *Semple,* for the point now made was necessarily involved in that case. To succeed he must overthrow that case, and that cannot be done without overruling the case of *Rodriguez* v. *United States.* The Act of June 14th, 1860, declares the value and effect of a survey in the following terms : " And the said plat and survey, so finally determined by publication, order or decree, as the case may be, shall have the same effect and validity in law, as if a patent for the land so surveyed had been issued by the United States ;" but the Act does not specify whether the patent, to which the survey is declared to be the equivalent, is one of the character described in the fifteenth section of the Act of Congress of March, 1851, to ascertain and settle private land claims in the State of California—which it is provided " shall be conclusive between the United States and the said claimants only, and shall not affect the interests of third persons "—

or whether it is one of a higher and more conclusive grade. No difference is expressly assigned between the value of a survey that becomes final by the approval and publication of the Surveyor-General, and one that is confirmed by the District Court. It is very clear, however, that a survey becoming final in the first mode, could not directly divest or impair the title that had already vested in a third person under a patent issued by the United States, because the title having been conveyed by the United States, there was nothing left to be passed by the ministerial act of the Surveyor-General. A survey that has the support of a decree of confirmation of the District Court, may have a very different and much greater value and effect. But if this question were now for the first time presented, in connection with the complicated facts found in this case, it might admit of a serious doubt, whether by this Act, with the " prompt and summary decision of all controversies on surveys and locations " therein provided for, it was also intended to create a new form of action for the trial of conflicting titles to land between adverse claimants. However this may be, we feel justified in following the construction adopted by the Supreme Court of the United States as we understand the decision in *Rodriguez* v. *United States*, and we are the more inclined to do so, because counsel have not called in question the authority of that case.

Judgment affirmed.

Mr. Chief Justice CURREY did not express any opinion.