JAMES YATES, Respondent, *v.* E. J. SMITH and J. M. ALLEN, Appellants.

Confirmation of Survey of Mexican Grant.— Case decided upon the authority of *Treadway* v. *Semple* (28 Cal. 652), and *Semple* v. *Wright* (32 Cal. 659.) Crockett, J., dissenting.

Idem.—Under the Act of Congress of June 14th, 1860, the confirmation of a survey is a judicial act, and the decree of confirmation has the force of *res adjudicata* against all persons, whether they intervened or not.

Effect of the Confirmation of Different Surveys of the same Land under Different Grants.—If the owner of a Mexican grant, who has obtained a confirmation of his survey is bound by a subsequent confirmation of a survey embracing the same land under another grant, the latter confirmee is equally bound by the decree approving and confirming the first survey; and in such case the Court will look behind the confirmations, and ascertain which has the prior equity. *Per* Crockett, J.

Mexican Grant for a Specific parcel of Land.—The elder grant gives the better title where it calls for a specific and ascertained parcel of land. Crockett, J.

Grant for a Specified Quantity of Land out of a much larger Body. — But, if a grant calls for a specified quantity of land to be located within certain larger exterior limits, the Government thereby reserves to itself the exclusive right to locate the quantity granted. Crockett, J.

Subsequent Grant of a portion of the Overplus.—If the Government subsequently granted to another, a portion of the overplus within certain designated bounds, this is, *pro tanto*, a location of the first grant, and an unequivocal declaration that the first grant should not be so located as to include the land embraced in the second. Crockett, J.

Idem.—In such case, the confirmation of the survey under the second grant ought not to be affected by the subsequent confirmation of the survey under the first grant—there being more than sufficient land, within the exterior limits called for in the grants, to satisfy the requirements of both. Crockett, J.

APPEAL from the District Court of the Tenth District, Colusa County.

The facts of this case are minutely detailed in 28 Cal. 652, and in 32 Cal. 659. They are likewise sufficiently recapitulated in the dissenting opinion of Mr. Justice CROCKETT, to render any further statement unnecessary for the full and clear apprehension of the points discussed or decided.

*George Cadwallader,* for Appellants.

*Jo Hamilton,* Attorney General, and *Haight & Temple,* for Respondent.

RHODES, J., delivered the opinion of the Court:

This case, in its material facts, is not distinguishable from *Treadway* v. *Semple* (28 Cal. 652), and *Semple* v. *Wright* (32 Cal. 659.) The fact that plaintiff received a conveyance of the premises in controversy before the confirmation of the survey of the Jimeno rancho, is not material, as, under the rule laid down in *Rodrigues* v. *United States* (1 Wal. 587)—upon the authority of which these cases were decided—the confirmation of the survey was binding upon all persons, whether they intervened or not. If that rule is believed to be wrong, the correction must be sought in the tribunal that laid it down. Its decisions on questions of this character are binding on us.

Upon the authority of those cases, the judgment of the Court below is reversed, and cause remanded for a new trial.

CROCKETT, J., filed the following dissenting opinion:

The principal features of this case are nearly identical with those of *Treadway* v. *Semple* (28 Cal. 652) and *Semple* v. *Wright* (32 Cal. 659.) Indeed, I perceive no material difference in the facts, except that in the present case it appears, that when the survey of the Jimeno rancho was finally confirmed, Semple, the claimant of the Colus rancho, had ceased to have any interest in the particular parcel of land which is in contest in this case, having, before that time, conveyed it to the plaintiff, who was there in the actual

possession, claiming the title in fee, under the conveyance from Semple. In the two former cases, the facts, with this exception, are minutely stated, and it is unnecessary to repeat them here. The defendants contend that the two former adjudications are decisive of this action, whilst the plaintiff not only asks us to review those cases, but insists, that if we shall adhere to them, they do not conclude the plaintiff, for the reason that he is not bound by the action either of Semple or the Court, in respect to the confirmation of the final survey of the Jimeno rancho.

Of the two ranchos, the surveys of which are in conflict, the Jimeno was first granted by the Mexican Government and was first presented to the Board of Land Commissioners for confirmation; but the confirmations of both ranchos became final by the action of the Supreme Court of the United States, at its December Term, 1855. In both cases the surveys were ordered into the District Court of the United States for review, in pursuance of the Act of Congress of June 14, 1860; and, on the 2d of February, 1861, the survey of the Colus rancho was approved by a final decree of said Court, and on the sixth day of the following April, the survey of the Jimeno rancho was in like manner approved by a final decree of the Court. Whilst the question of survey of the Colus rancho was pending in Court, one Hagar, who had succeeded to the title of the grantees of the Jimeno rancho, to that portion thereof which includes the premises in controversy, and under whom the defendants claim title, intervened, and excepted to said survey on the ground that it embraced a portion of the land granted to Jimeno; but he afterward, with leave of the Court, withdrew his intervention. When the survey of the Jimeno rancho was pending in Court, Semple, to whom the Colus rancho had been finally confirmed, intervened and filed exceptions to the survey, alleging that he was the owner of an undivided interest of about two-thirds of one league of the Jimeno rancho, claiming title thereto under the original grantees; and that said survey, to the extent of two leagues, had been located "upon land claimed by the owners of the Colus grant, containing two leagues, finally confirmed to this affiant;

and this affiant believes that the title to the Colus grant is superior to the title to the Jimeno grant to the same land; so that if the title to the Colus grant shall prove to be the superior and better one, then this affiant will lose about one-half of his aforesaid interest." But it appears from the final decree of April 6, 1861, confirming the survey of the Jimeno rancho, that the intervenor, Semple, appeared personally in Court and consented, in open Court, to the decree confirming the survey. It appears, further, that the Jimeno rancho was a grant for eleven leagues, to be located within certain larger exterior limits, embracing about nineteen leagues; and that the Colus was a grant for two leagues, to be located within certain exterior limits, embracing about six leagues, which were also included within the exterior limits of the Jimeno rancho. The Jimeno rancho was finally confirmed for eleven leagues, and the Colus for two leagues, and the final surveys of each include the land in contest. In *Treadway* v. *Semple*, and *Semple* v. *Wright (supra)*, we held, on the authority of *Rodrigues* v. *United States* (1 Wallace, 587), that the proceedings under the Act of Congress of June 14, 1860, authorizing surveys to be ordered into the District Court for review, were judicial in their nature; and that when Semple intervened in the proceedings for the survey of the Jimeno rancho, and made himself a party thereto, and especially when he appeared in open Court and consented to the decree approving the survey, he became concluded thereby, and could not afterwards impeach the correctness of the survey in a collateral action. We are now asked to review this proposition.

That the proceedings under the Act of Congress of June 14, 1860, are of a judicial nature, admits of no debate. They are conducted before a Court having the requisite jurisdiction. The parties in interest are allowed to intervene, and to adduce proofs on the questions at issue, and the Court is to pronounce a judgment on the facts, either approving or modifying the survey, or rejecting it entirely and ordering a new one. These are the peculiar functions of a Court, clothed with the requisite authority, to decide that class of cases, and its proceedings in that behalf are

necessarily judicial in their nature. Whether or not, persons who intervene in such proceedings, either to support or resist the survey, are absolutely concluded by the judgment to a degree which precludes them from afterwards questioning its correctness, in a collateral action, need not be decided in this case, inasmuch as the decision of it would not, in my opinion, touch the merits of the controversy. I shall assume, therefore, for the purpose of the argument, that neither Semple, nor any one claiming under him, can impeach or gainsay the correctness of the final survey of the Jimeno rancho. But it is manifest the same principle would apply to the survey of the Colus rancho. The law does not blow hot and cold in the same breath. If the final survey in the one case is conclusive against intervenors, the survey in the other case must, of necessity, be conclusive against all those who had the opportunity to intervene, but declined or omitted to do so. The mere fact of an actual intervention, is in no degree more conclusive than the failure to intervene after due notice. The statute provides an appropriate method for giving notice, by publication, to all parties in interest, of the pendency of the proceeding. This is equivalent, in law, to the service of a summons upon them, and is only a substitute for such service. Those who appear in obedience to the notice, and actually intervene, are no more bound by the judgment than those who might have appeared, but who declined or omitted to do so. This is a familiar principle, applicable not only to proceedings *in rem*, but to all cases where a service by publication is substituted for an actual service. The claimants of the Jimeno rancho are, therefore, as much concluded by the final survey of the Colus, as the claimants of the latter are by the survey of the former. Indeed, it is urged, with much plausibility, that they are the more concluded, from the fact that the final decree approving the Colus survey was prior in time.

But, assuming that each party was equally concluded by the survey of the other, and that the priority in time does not vary the rights of the parties, the case then resolves itself into this : That there was granted to Jimeno eleven

leagues of land, to be located within exterior boundaries containing nineteen leagues; that there was afterward granted to Semple, or his predecessor, two leagues, under the name of "Colus," to be located within certain portions of the same exterior boundaries; that both grants have been finally confirmed, and finally located and surveyed under the orders of the United States District Court; and that the land in contest is included in both surveys. On these facts, the question is: Which has the better title—the plaintiff, deriving title under the Colus grant, or the defendants, claiming under Jimeno? The solution of this question must depend, in a great measure, on the relative rights which the parties acquired, under the laws of Mexico, by their respective grants. The Jimeno rancho has been finally confirmed, located and patented, and the Colus has also been finally confirmed and located by a final, approved survey, which the law declares to be equivalent to a patent. (12 Stats. at Large, 34; *Seale v. Ford,* 29 Cal. 106.)

In other words, each party holds a legal title, so far as the patent of the United States could confer it. In cases of conflicting patents for the same lands, it is well settled that, even in an action at law, the Court will look behind the patents, and ascertain which has the better and prior equity; and will give effect to the rights of the parties accordingly. (*Smith* v. *Athearn,* 34 Cal. 506.)

Tested by this rule, which of these parties has the better title? If the grant to Jimeno, which was prior in time, had been for a specific parcel of land, by metes and bounds, and if the Government had subsequently granted a portion of the same land to Semple, or his predecessor, the question would be free from embarrassment. No one could doubt that the title of Jimeno would prevail in an action at law, even though his patent was subsequent in date to the other. We would, in that event, invoke the rule to which I have adverted. We would look behind the patents to inquire into the equities; and, on ascertaining that the grant to Jimeno was prior in time, and for a specific parcel of land, by metes and bounds, we would hold that his grant was paramount to a subsequent grant of the same land to another. But, from

the time of the decision in *United States* v. *Fremont* (17 How.
U. S. 542), down to the present date, it has never been ques-
tioned or denied, so far as I am aware, that under the Mexi-
can system of granting lands, if a grant were made for a
specific quantity, to be afterwards located within certain
larger exterior limits, the Government had the exclusive
right to locate the quantity granted, and thus to give preci-
sion to a claim which before was vague and indefinite, and
had attached to no particular parcel within the general limits.
The grantee had no option in respect to the particular loca-
tion.   He was bound to content himself with whatever loca-
tion the Government awarded to him within the exterior
limits.   It is equally well settled, that on our acquisition of
the territory this right of segregation and location passed to
the United States, as the successor of the former sovereign.
But, so long as the Mexican dominion continued, that Gov-
ernment had the unquestionable right to locate the eleven
leagues granted to Jimeno, at any place within the exterior
limits of his grant.   "Under the Mexican Government, the
survey was to be made or approved by the officer of the Gov-
ernment, and the party was not at liberty to give what form
he pleased to the grant.   *   *   *   The right which the
Mexican Government reserved to control this survey passed,
with all other public rights, to the United States." (*Fremont*
v. *United States, supra.*)   This rule of law has been invari-
ably recognized by this Court. (*Waterman* v. *Smith,* 13 Cal.
373; *Moore* v. *Wilkinson, Id.* 478; *Leese* v. *Clark,* 18 Cal.
535; *Mahony* v. *Van Winkle,* 21 Cal. 552; *Rich* v. *Maples,*
33 Cal. 102.)   It is not pretended, however, that any such
location, in express terms, of the grant to Jimeno, was made
by the Mexican Government; but it is an admitted fact, that
the two leagues composing the Colus rancho, to be located
within an area of six leagues, included within the exterior
limits of the grant to Jimeno, was subsequently granted by
the Mexican Government to Semple, or his predecessor in
interest.   This was an unequivocal declaration by the Gov-
ernment, that the grant to Jimeno should not be so located
as to include the two leagues embraced in the Colus.   It was,
*pro tanto,* a location of the Jimeno grant, and a grant of two

leagues of the surplus to the Colus. In *Fremont* v. *United States* (p. 558), the Court says : "It is true that if any other person within the limits where the quantity granted to Alvarado was to be located, had afterward obtained a grant from the Government, by specific boundaries, before Alvarado had made his survey, the title of the latter grantee could not be impaired by any subsequent survey of Alvarado ;" and, in support of this position, the Court refers to *Rutherford* v. *Greene's Heirs* (2 Wheat. 196.) This is undoubtedly sound law, and is founded on principles of reason and justice. If the owner of a tract of one thousand acres should sell and agree to convey to A. five hundred acres, to be afterward located, at the option of the grantor, within the exterior limits, and should afterward agree to convey to B. one hundred acres, to be located by the grantor within the northern half of the one thousand acre tract, nothing can be plainer than that the grantor could not afterward locate the five hundred acres of A. so as to include the whole of the ·northern half, and thereby exclude B. from the proper location of his one hundred acres. Much less could the grantor, after locating correctly the one hundred acres sold to B., include the same land in locating the five hundred acres sold to A. To state this proposition is to prove it, and no argument could make it plainer. This is precisely what has been done in this case. The authorities of Mexico agreed to convey to Jimeno eleven leagues, to be located by the Government, at any place it might elect, within a specified area of nineteen leagues ; afterward, it agreed to convey to Semple, or his predecessor, two leagues, to be located within certain specific six leagues, which were a portion of the nineteen leagues. Subsequently, the Government of the United States, which had succeeded to the rights and duties of that of Mexico, in this respect, actually located the "Colus" property within the specified six leagues, after which it proceeded to locate the Jimeno grant so as to include the same land, which was manifestly wrong, and in violation of the rights of the owners of the Colus grant.

The material facts of this case are very similar to those in *Waterman* v. *Smith*, (13 Cal. 373), in which case it appears

that in March, 1840, the Mexican Government granted to Armijo a tract of three leagues, to be located within exterior limits embracing from twelve to twenty leagues. Subsequently, in 1842, it granted to the Indian chief Solano four leagues, to be located within exterior limits embracing about eight leagues; and the maps referred to in both grants covered the land in controversy. The grant to Solano was confirmed, finally located and patented, so as to include the land in dispute, and the grant to Armijo had been confirmed by a decree of the District Court, but was pending on appeal to the Supreme Court of the United States. Under these facts, the plaintiff, claiming under Solano, brought his action to recover the land from the defendant, who was in possession under Armijo. If the grant to Armijo had been finally confirmed, and located by a final approved survey, so as also to include the same land, the legal propositions involved in that case would have been precisely the same which arise in this, unless the subsequent Act of Congress of June 14, 1860, conferring on the District Court the power to supervise surveys, shall have varied the right of the parties. In that case, this Court held that the plaintiff was entitled to recover, on the ground "that the grants to Solano and Armijo passed a present and immediate interest in the quantity of land specifically designated in their respective grants, to be afterward surveyed and laid off within the exterior limits of the general tracts by the Government; that remedy could only be made under the former Government by its officers, and could not be made by the grantees themselves; that the right of survey passed, with other public rights, to the Government of the United States, and is to be exercised in pursuance of its policy, and in conformity with its laws; that, by its legislation, the subject of surveys is entrusted to the executive department; that the location of confirmed grants, when the quantity granted is without specific boundaries, lying within a larger tract, rests exclusively with such department, and cannot be reviewed or corrected by the judiciary, but is binding and conclusive upon it in actions of ejectment, except only when the patent issued thereon conflicts with prior rights of third parties, and then its inconclusiveness

is maintained only so far as may be necessary for the protection of such prior rights." Hence it was held, that though the plaintiff's grant was subsequent in date to the defendants', and was for a specific quantity, to be located within larger exterior limits, which larger limits were wholly or partially within the exterior limits of the defendant's elder grant, nevertheless, inasmuch as the plaintiff's grant had been confirmed, finally located and patented, the plaintiff's title must prevail over the defendants', which had not been either confirmed or located. But, if both had been confirmed and located, and particularly if the junior grant to Solano had been first finally located, it is quite evident that it would have been entitled to priority, for the reason that the question of location rested exclusively with the Government, and so long as there remained within the exterior limits of the grant to Armijo enough to satisfy his claim, it was competent for the Government to grant and appropriate the surplus to Solano, without inflicting any wrong upon Armijo, who took his grant with a knowledge that the Government reserved the right to locate it wherever it saw fit, within the exterior limits.

The same reasoning applies to the case at bar. When Jimeno received his grant for eleven leagues, to be afterwards located within an area embracing nineteen leagues, he knew that the Government reserved the right to locate it anywhere within that area, and that it had the power to grant the surplus to another. When a portion of this surplus was afterwards granted to Semple, or his predecessor, and was subsequently located by the Government, it only exercised an undoubted power, in nowise prejudicial to the rights of Jimeno or his grantees. The subsequent location of the grant to Jimeno on the same land, cannot, and ought not to prejudice the claimants of the Colus, who are, in no respect, responsible for the erroneous action of the Government in that behalf. If the location of the Colus was proper when it was made, as we must presume it was, it could not afterwards have become erroneous by force of the fact that the Government subsequently located the same land in the grant to Jimeno. It is impossible that both locations can be

proper, and stand together; and as it cannot be doubted that the Government of Mexico had the right to grant the surplus, and that the Government of the United States, as the successor to the Mexican Government, had the absolute power to locate the surplus so granted. It follows, as a logical deduction, that when it has thus located it, in accordance with the existing laws, it cannot nullify its own valid act by subsequently locating the Jimeno grant over the same land. The error was not in the first, but in the last location.

Nor do I perceive how the result can be varied by the fact that both locations were made under the authority of the District Court, under the Act of June 14, 1860, and not by the executive officers of the Government. The result of these proceedings is, that each claim has been finally located, and the title of the defendants has ripened into a patent, whilst the plaintiff has a final approved survey, which is equivalent to a patent.

In other words, each party has a legal title, so far as the Government can confer it. They occupy, therefore, the same relative positions which they would have occupied, if each had obtained a patent prior to the passage of the Act of June 14, 1860, unless there be something in that Act which varies their rights; but, as we have seen, if Semple is concluded by the survey of the Jimeno grant, the claimants of the latter are equally concluded by the survey of the Colus grant. On the other hand, if the latter are not concluded by their failure to intervene, after notice, Semple is not concluded by his actual appearance and his consent to the Jimeno survey. A failure to intervene, after notice, in the one case, is equally as obligatory as an actual appearance and consent in the other. I do not, perceive, therefore, but that the rights of the parties are precisely the same as they would have been if each had obtained a patent in due course of law, prior to the passage of the Act of June 14, 1860. It results from the foregoing views, that it is not material whether or not the plaintiff intervened and excepted to the Jimeno survey. He is as much bound by it as if he had intervened and actually consented to it. But the defendants being in like manner concluded by the Colus survey,

and each having a legal title, the rights of the parties must be tested by an inquiry into the equities; and, as we have seen, the plaintiff has the best equity.

It is alleged, however, that these views are inconsistent with those advanced in *Leese* v. *Clark* (18 Cal. 570), and several subsequent cases decided by this Court, and in *Beard* v. *Federy* (3 Wallace, U. S. R. 478), in which it is held that a patent of the United States, issued upon a confirmation of a claim to land, by virtue of a right or title derived from Spain or Mexico, is to be regarded in two aspects: as a deed of the United States, and as a record of the action of the Government upon the title of the claimant as it existed upon the acquisition of California. That, as a deed, its operation is that of a quitclaim, or rather of a conveyance of such interest as the United States possessed in the land, and it takes effect, by relation, at the time when proceedings were instituted by the filing of the petition before the Board of Land Commissioners; that, as a record of the Government, it is evidence that the claim asserted was valid under the laws of Mexico; that it was entitled to recognition and protection by the stipulations of the treaty, and might have been located under the former Government, and is correctly located now, so as to embrace the premises as they are surveyed and described. The argument in behalf of the defendants is, that the patent for the Jimeno rancho is conclusive evidence, on the authority of these decisions, that it is correctly located, and that neither Semple nor his vendees can impeach its correctness in a collateral action. But inasmuch as the final survey of the Colus rancho is equivalent to a patent, it falls within the same category; and the same argument which establishes that the location of the Jimeno grant cannot be assailed, of necessity, applies to the location of the Colus rancho. Assuming that neither can impeach the survey of the other, and each holding a legal title under a claim derived from Mexico, we are compelled to go behind the respective patents and inquire into the equities. On this inquiry, we find, for the reason already stated, that the superior equity is in the claimants under the Colus grant. Nor is it material which was first

presented for confirmation, or first actually confirmed. If they had been conflicting grants for the same land, it might have become important to ascertain which was first granted, and possibly, which was first confirmed or presented for confirmation—though I express no opinion on that point. But there is no conflict between the two grants. The land included in the Colus was never granted to Jimeno, but was only a portion of a larger tract, within which there was to be assigned to him, by the Government, the lesser quantity which was granted. Enough remained to satisfy his grant, without interfering with the Colus; and if Jimeno, or his grantees, have suffered damage from the action of the Government in locating the grant, so as to include the land granted, confirmed and finally located under the Colus grant, which has the superior equity, no redress for the grievance can be afforded in this action—nor in any other that I am aware of—except by a direct proceeding, in the name of the United States, to vacate the patent to Jimeno, with a view to a new and different location of the land, so as to avoid the conflict in the two surveys.

So far as the cases of *Treadway* v. *Semple* and *Semple* v. *Wright* contravene these views, they ought, in my opinion, to be overruled, and the judgment in this action ought to be affirmed.

SPRAGUE, J., expressed no opinion.